[S. F. No. 8149. In Bank.—October 14, 1918.]

SAN FRANCISCO THEOLOGICAL SEMINARY (a Corporation), Respondent, v. MONTEREY COUNTY GAS AND ELECTRIC COMPANY, Appellant.

GUARANTY—PAYMENT OF BONDS—DEFAULT IN PAYMENT OF INTEREST—IMMEDIATE LIABILITY OF GUARANTOR.—A writing indorsed upon bonds of a railway company reciting an agreement with the holders of the bonds that if the several sums of money agreed to be paid on the face of each bond were not "paid in the manner therein stated as they severally became due," the guarantor would pay the

same, renders the guarantor immediately liable for the payment of the principal of the bonds upon default in the payment of interest, where the bonds recited that they were secured by mortgage, and expressly referred to the mortgage in such a manner as to incorporate the provision of the mortgage for accelerating the maturity of the principal upon default in the payment of interest.

Id.—Nature of Guarantor's Liability.—Under such a guaranty, the liability of the guarantor is not dependent upon the mortgage, and enforceable only by means of the action of foreclosure provided for in section 726 of the Code of Civil Procedure, since the guarantor's obligation rests solely upon the contract of guaranty, and the mortgage is looked to merely to interpret and measure the extent of the guaranty.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  J. M. Seawell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chickering & Gregory, and Thomas H. Breeze, for Appellant.

W. F. Williamson, Wm. H. Conlin, and R. H. Cross, for Respondent.

SLOSS, J.—This is one of a group of seventeen cases, in each of which the defendant appeals from a judgment against it.

The several actions were brought by different plaintiffs, as holders of bonds issued by Monterey and Pacific Grove Railway Company (herein called the "Railway Company"), to recover on a written guaranty by the defendant (herein called the "Gas Company") of the payment of such bonds. In each action the plaintiff had judgment for the full amount of the principal of the bonds so held, together with accrued interest. In some of the cases the defendant failed to answer after the overruling of its demurrer to the complaint, and judgment went against it by default. In others an answer was filed and judgment was rendered after trial, the court making findings in substantial accord with the allegations of the several complaints. Notwithstanding this difference, the material facts and the legal questions to be decided are the same in all the cases, and all have been submitted together.

In 1907, the Railway Company took the necessary steps for the creation of a bonded indebtedness in the sum of three hundred thousand dollars, evidenced by three hundred bonds in the sum of one thousand dollars each. The bonds were issued under date of July 1, 1907, and were made payable July 1, 1937, with interest at the rate of six per cent per annum, payable semi-annually. Coupons for the interest installments were attached. The indebtedness was secured by a mortgage or deed of trust made by the Railway Company to the Mercantile Trust Company of San Francisco.

The Gas Company was the owner of all of the capital stock of the Railway Company. It guaranteed the payment of the bonds by executing a printed form indorsed upon each bond. The guaranty was in these words:

"Guaranty of Payment.

"For value received, Monterey County Gas and Electric Company, a corporation, agrees, to and with the holder of this bond and the attached coupons, that if the several sums of money agreed to be paid hereby are not paid in the manner therein stated, as they severally become due, then and in that event the Monterey County Gas and Electric Company will pay the same.

"This contract is duly authorized by a resolution of the board of directors of the Monterey County Gas and Electric Company.

"Monterey County Gas and Electric Company.
"By George Heazelton,
"President.
"Attest: Burke Corbet, Secretary."

Each of the bonds set forth, on its face, a promise by the Railway Company to pay one thousand dollars on the first day of July, 1937, and to pay interest thereon at the rate of six per cent per annum, as per coupons attached, on the first days of January and July in each year. It went on to declare that:

"This bond is one of a series of first mortgage six per cent bonds of the Monterey and Pacific Grove Railway Company, of the denomination of one thousand dollars ($1,000) each, . . . issued and to be issued . . . under the provisions of, and to be equally secured by a mortgage, dated July first, 1907, executed by the Monterey and Pacific Grove Railway Com-

pany to the Mercantile Trust Company of San Francisco, as trustee, to which mortgage reference is hereby made for a description of the property, rights and franchises mortgaged, the nature and extent of the security, the rights of holders of bonds under the same, and the terms and conditions upon which the bonds are issued and secured.''

Article V of the mortgage provided that in case of default by the Railway Company in the payment of interest on any bond, and a continuance of such default for ninety days, ''the trustee may, and upon the written request of the holders of a majority in amount of the bonds hereby secured and then outstanding shall, by notice in writing delivered to the Railway Company, declare the principal of all bonds secured hereby and then outstanding to be forthwith due and payable and thereupon the same shall become and be immediately due and payable, anything in this indenture or in said bonds contained to the contrary notwithstanding.''

Article V goes on to provide that after such declaration that the principal is due, if all arrears of interest be paid and all other defaults made good, the holders of a majority in amount of the bonds then outstanding may by written notice waive such default and its consequences.

The Railway Company defaulted in the payment of the interest coupons maturing on the first day of January, 1915, and no part of the interest then due has been paid. On June 12, 1915, the trustee, exercising the authority conferred upon it by article V of the mortgage, declared the principal sum of all the bonds to be immediately due and payable, and demanded payment thereof from said Railway Company, but said Railway Company has failed to pay the same.

The main contention of the appellant is that the action is premature, in so far as it attempts to make the guarantor immediately liable to pay the principal sum of the bonds. The argument is that by its guaranty the Gas Company merely undertook to pay if the sums agreed to be paid on the face of each bond were not ''paid in the manner therein stated as they severally become due''; that by the bond the maker's obligation to pay principal matured on July 1, 1937, and that until there had been a default in making the payment then due, the guarantor could not be held liable for principal. It is settled law, as appellant contends, that a guarantor cannot be held beyond the express terms of the contract of guaranty. (*Postlethwaite* v. *Minor,* 168 Cal. 227,

[142 Pac. 55].) If the agreement of the appellant went no further than to guarantee that the principal of the bonds should be paid on July. 1, 1937, it could not be called upon to pay this amount at any time prior to such due date. The guarantor was not a party to the mortgage, and did not guarantee performance of the obligations imposed upon the Railway Company by the mortgage alone. The principle is well illustrated by the recent decision of Department One of this court in *Chinn* v. *Penn, ante,* p. 153, [175 Pac. 687]. There the payee of a note secured by mortgage had assigned the note and mortgage, indorsing upon the note the words "payment guaranteed." It was sought to hold the guarantor liable for the payment of attorneys' fees, taxes, and assessments on the property, the mortgage providing that it secured these items, but the note making no reference to them. The court declared that the payee's "indorsement of the note guaranteeing that instrument cannot be extended by implication so as to cover other obligations contained only in the mortgage. Having thūs limited his guaranty by his written contract declaring the same, he is bound only by its terms."

But in the present case the undertaking of the Railway Company, expressed on the face of each bond, and guaranteed by the Gas Company, was not so closely limited as the argument of the appellant assumes. The bond not only promises to pay the principal on July 1, 1937, but it makes express reference to the mortgage in such manner as to incorporate the provision of that instrument for accelerating the maturity of the principal upon default in the payment of interest. It is true that the bond refers to the mortgage for specified purposes only, but the terms of the reference are broad enough to include the acceleration provision. Reference to the mortgage is made, so the bond declares, not only for a description of the property mortgaged and the nature and extent of the security, but for "the rights of holders of bonds under the same, and the terms and conditions upon which the bonds are issued and secured." One of the rights of holders of bonds under the mortgage is that the principal may be declared immediately due upon default, sufficiently long continued, in the payment of interest. That the due date of the principal may be so advanced is also one of "the terms and conditions" upon which the bonds are issued. Under any reasonable interpretation of the language of the bonds, the provisions of article V of the mortgage must be held to be

included in the reference. In effect, the bond does not merely bind its maker to pay the principal upon the first day of July, 1937. By referring to the provisions of the mortgage, it qualifies the promise to pay, and declares that in certain contingencies the principal may become due at an earlier date. When, then, the guarantor bound itself to pay the several sums of money agreed to be paid by the bond if they were not "paid in the manner therein stated, as they severally became due," it made itself liable for the payment of the principal of the bonds whenever such principal should become due, whether on the first day of July, 1937, or at such earlier time as might be fixed under the mortgage provisions incorporated in the bond.

We are unable to see that the provision of the mortgage authorizing the holders of a majority of the bonds to waive past defaults has any bearing upon the question we have been discussing. By the declaration of the trustee, the principal has become due, and the liability of the guarantor has accrued. There is no occasion to consider the effect on such liability of a waiver, if the bondholders should take the necessary steps to effect a waiver. It is not suggested that they have, in fact, done so.

The question of the extent of the guarantor's liability is simply one of construction. The appellant relies upon two decisions of other courts, but we find that each of them is readily distinguishable, in respect to the form of words under consideration, from the case before us. In *Union Trust Co. v. Detroit Motor Co.,* 117 Mich. 631, [76 N. W. 112], the writing provided that the makers "guarantee the prompt payment of the same [the bonds], both principal and interest, at the time and times specified in the bonds, and in each of them." The bonds merely stated that they were secured by a certain mortgage. They contained no reference to the provisions in the mortgage for accelerating the due date, and the decision was, accordingly, that the guarantors could not be held liable until default in payment "at the times specified" in the bonds themselves. In *Dougan* v. *Evansville etc. Ry. Co.,* 15 App. Div. 483, [44 N. Y. Supp. 503], the court considered two causes of action, based on separate guarantees of different bond issues. The first cause of action was based on an instrument, by which the defendant guaranteed "the payment of the principal and interest mentioned in the within bond according to the tenor and effect thereof." There was a

provision in the mortgage with reference to acceleration, but it did not provide that the principal should become due upon default in the payment of interest; it merely provided that upon such default, continuing for six months, the principal should become collectible out of the mortgaged premises. The court held that by this clause of the mortgage the maker of the bonds did not bind itself to pay the principal at any time before the ultimate due date. And it was for this reason that the guarantor was relieved of any liability to pay the principal before such date. In other words, the decision did not go upon the ground that the terms of the mortgage were not incorporated in the bond. The guarantor was not bound because the borrowing corporation itself was not liable for the principal until the expiration of the total period of the loan.

As bearing generally upon the questions discussed, and tending in some degree to sustain the views here announced, we may cite that part of the opinion in the Dougan case, *supra,* which deals with the second cause of action, one based upon a bond issue and guaranty executed under conditions more closely analogous to those here presented; also *Crump v. J. I. Case Threshing Machine Co.,* 136 Ky. 60, [123 S. W. 333].

The appellant contends, further, that the liability here sought to be enforced is dependent upon the mortgage, and therefore, can only be enforced by means of the action of foreclosure provided for in section 726 of the Code of Civil Procedure. The claim is without merit. The guarantor's obligation rests solely upon its contract of guaranty. The mortgage is looked to merely to interpret and measure the extent of the guaranty. The guarantor's obligation is not secured by the mortgage, and suit may be maintained upon it without reference to any proceeding against the principal debtor or the security. (*Adams* v. *Wallace,* 119 Cal. 67, [51 Pac. 14]; *Kinsel* v. *Ballou,* 151 Cal. 754, [91 Pac. 620]; *Martin* v. *Becker,* 169 Cal. 301, [Ann. Cas. 1916D, 171, 146 Pac. 665].)

The judgment is affirmed.

Shaw, J., Richards, J., *pro tem.,* Wilbur, J., Melvin, J., Lorigan, J., and Angellotti, C. J., concurred.

Rehearing denied.