[Civ. No. 3026. First Appellate District, Division Two.—October 14, 1919.]

J. F. MURPHY, Appellant, v. HELLMAN COMMERCIAL TRUST & SAVINGS BANK (a Corporation), et al., Defendants; SAMUEL F. RANDALL, Respondent.

[1] MORTGAGES—CONSTRUCTION OF DEED—FORECLOSURE.—A deed absolute on its face may be treated as a mortgage and foreclosed as such if that was the intention of the parties thereto.

[2] ID.—CONSTRUCTION OF SECTION 726, CODE OF CIVIL PROCEDURE—APPLICATION TO GUARANTORS AND SURETIES.—The provision of section 726 of the Code of Civil Procedure that "there can. be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property"

---

1. Right to foreclose deed intended as security for debt, as an equitable mortgage, note, 22 L. R. A. (N. S.) 572.

was enacted for the benefit of the principal debtor and to relieve him from liability from a multiplicity of actions, and does not apply to an individual guarantor or surety, or to a subsequent indorser upon a promissory note, nor in fact to any case where there is no privity of contract between the two existing obligations—that is, where the primary debt and the obligation under the mortgage are separate and distinct obligations.

[3] ID.—PROSECUTION OF SUIT AGAINST PRINCIPAL DEBTOR—RIGHT TO BRING SUBSEQUENT ACTION AGAINST THIRD PARTIES ON COLLATERAL. The fact that a creditor has commenced and prosecuted to final judgment an action against the principal debtor will not constitute a defense to a subsequent action against third parties to foreclose on collateral given by them as security for the payment of the debt.

[4] CONTRACTS—LIABILITY OF GUARANTORS AND SURETIES—EXTENSION OF.—Guarantors and sureties cannot be held beyond the express terms of their contracts. Thus, where the limit of their liability is the purchase price of certain property, which is being sold under a lease contract, this liability cannot be extended to cover rentals accruing under the lease or damages for breach of the contract.

[5] ID.—DEFAULT OF PURCHASER UNDER LEASE CONTRACT—TERMINATION OF CONTRACT—ELECTION OF REMEDIES.—Where the seller of property under a lease contract, upon default of the purchaser, takes back the property, he treats the contract of sale as at an end. He is then required to stand upon his contract and sue for the breach, or to treat the contract as ended and sue for the rescission. He cannot pursue both remedies.

[6] ID.—TERMINATION OF CONTRACT—LOSS OF RIGHT TO SUE FOR PURCHASE PRICE—RELEASE OF COLLATERAL.—Where the seller elects to treat the contract of sale as at an end, he not only loses his right to sue for the purchase price of the property but, by terminating his contract, he loses his right to foreclose on the collateral given as security for the payment of the purchase price.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge. Reversed.

The facts are stated in the opinion of the court.

A. D. Laughlin for Appellant.

John Dennison and Franklin F. Johnson for Respondent.

NOURSE, J.—This is an appeal from a judgment in favor of the defendants in an action to subject certain real prop-

___

5. When plaintiff is bound to elect remedy, note, 4 L. R. A. 147.

erty to the payment of an indebtedness. The facts of the case are that on February 25, 1914, one J. F. Goggins executed what has been called by the parties a "lease note," which instrument acknowledged receipt of eight mules, eight horses, harness, etc., received by Goggins from the plaintiff, which he agreed to return within one year, and also contained an agreement on the part of Goggins to pay $3,375 for the use of said stock. It also reserved to Goggins the privilege of purchasing said property within the year for the sum of $3,375, said sum to be paid in monthly payments of $250 or more per month, beginning April 1, 1914. At the same time the defendants Samuel F. Randall and Amanda M. Randall, his wife, executed to the defendant Hellman Commercial Trust & Savings Bank, a deed to the real property in controversy in this action. Said deed was an unconditional grant and stated the consideration to be $10. At the same time the plaintiff executed a bill of sale of the horses and mules in favor of Goggins. All of these instruments were deposited with the Hellman Commercial Trust & Savings Bank in escrow, with instructions from the plaintiff that the title to the real property was to be reconveyed to the defendant Randall, and the bill of sale of the personal property was to be delivered to Goggins only upon the payment by Goggins of the full amount called for by the agreement.

. Nothing was paid on the so-called lease note, and on February 25, 1915, the same was extended for one year by indorsement on the back thereof. On the same date the defendants, Samuel F. Randall and his wife, sent to said bank a letter agreeing to the extension of the note and consenting that the property deeded to the bank should be held as security "until such time as said lease note is paid, together with all accrued interest thereon." This letter also recited that the deed to the bank conveying the property had been made in accordance with the oral understanding of the parties that it was given as collateral security for the payment of the said note. Mr. Goggins never made any payments upon his obligation. He took the stock to San Diego and rented some of the horses and mules to contractors, and placed the others in pasture, where they were being held for feed bills in July, 1915, when the plaintiff went to San Diego. The extended lease note had not expired at that time, but Goggins, being unable to make any payments upon

the same or to pay the feed bills for which the animals were being held, voluntarily surrendered possession to Murphy of the stock which he had, and Murphy paid the feed bills and secured possession of six of the horses and six of the mules, two horses and two mules having been lost.

Plaintiff then commenced an action against Goggins to recover the rentals specified and for damages for the breach of the contract, and recovered a judgment by default for $6,521.89, which included the rental value of the stock, the value of the two horses and two mules which were not returned, the amount of the feed bills paid by plaintiff, and the amount of depreciation in the value of the stock returned to him by reason of improper care, feeding, etc. This default judgment was rendered on the sixteenth day of October, 1915, which was before the time for payment of the extended lease note had expired. Later, and after such time had expired, the plaintiff began the present action, in which he sought to compel the sale of the property deeded to the bank by Randall and have the proceeds applied to the satisfaction of the judgment against Goggins.

The trial court held that this action was barred by the provisions of section 726 of the Code of Civil Procedure, which provides that there can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property. [1] The contention of appellant is that the deed and the trust agreement signed by the Randalls together constitute a deed of trust, and that said deed of trust is not within the provisions of section 726, of the Code of Civil Procedure. This is not the theory upon which the case was tried. In the trial court the plaintiff sought to have the instrument treated as a mortgage and foreclosed as such, and he alleges in his complaint that the bank "accepted said deed solely as collateral security" for the performance of all the covenants and agreements contained in the contract between Murphy and Goggins. Plaintiff also sets out in his complaint the letter from the defendant Randall in which the purpose of the deed to the bank is set forth, and where it is stated to be collateral security for the payment of the lease note. The prayer of the complaint is for foreclosure, that the usual decree may be made for the sale of said premises, and that all persons may be barred and foreclosed of all right, claim,

or equity of redemption in said premises. This relief cannot be asked under the terms of any trust agreement of the parties, but only under the power of the court to foreclose mortgages. In the case of *Felton* v. *Le Breton*, 92 Cal. 457, [28 Pac. 490], it is said that wherever the grantee treats a trust deed as a mortgage and goes into a court of equity asking for a foreclosure and sale under its decree, his relation to the trust property is the same as that of a mortgagee in the foreclosure of an ordinary mortgage. In the case of *Hall* v. *Arnott*, 80 Cal. 348, [22 Pac. 200], section 726 of the Code of Civil Procedure was held to apply to the foreclosure of a mortgage which was in form a deed absolute where it was admitted by the pleadings that such deed was given as security for an indebtedness. The decisions are numerous to the effect that a deed absolute on its face may be treated as a mortgage and foreclosed as such if that was the intention of the parties thereto. (*Hall* v. *Arnott, supra; Prefumo* v. *Russell*, 148 Cal. 451, [83 Pac. 810].)

But it makes little difference whether the deed is treated as a mortgage or as a deed of trust. Treating it in the light most favorable to respondent, that is, as a mortgage, then the question is put squarely in issue whether, the mortgage having been taken as collateral security for the payment of the purchase price specified in the lease note, the plaintiff has lost his right to foreclose because of the judgment against the primary debtor on the contract.

[2] Section 726 of the Code of Civil Procedure provides in part: "There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property." This section was enacted for the benefit of the principal debtor and to relieve him from a multiplicity of actions. As stated in the opinion of the supreme court in *Martin* v. *Becker*, 169 Cal. 301, 304, [Ann. Cas. 1916D, 171, 146 Pac. 665], the section followed the statutory change in the common-law rule regarding the character of a mortgage, wherein it was provided that a mortgage conveyed no title, but gave security of a lien only upon the property, whereas under the common-law the mortgage was a conveyance of the title upon a condition subsequent without right of redemption. The recourse under the common law was a suit in equity for relief against the forfeiture, but the mortgagee might go to law to recover the amount

of the debt secured by the mortgage. Thus, under our statute, the mortgage security must first be exhausted before any deficiency judgment can be had against the primary debtor. But the rule is one which was clearly designed for the benefit of the primary debtor, and is, therefore, one which he can waive. Furthermore, as has been said in the case above cited (169 Cal., page 305, [Ann. Cas. 1916D, 171, 146 Pac. 667]), "the law never contemplated that because a man had taken a mortgage he could not take other independent security for his debt, and, if the contract for such security permitted it, enforce such contract without reference to the mortgage debt." The court then held that a materialman who took a mortgage from a contractor on his property for the materials sold and used in the construction of a building by the contractor on the property of another did not lose his right to claim and foreclose a mechanic's lien on the property upon which the materials were used.

In *Knowles* v. *Sandercock,* 107 Cal. 629, [40 Pac. 1047], the supreme court held that an action would lie against the stockholders of a corporation for a liability of the corporation though the corporate liability was evidenced by its note secured by mortgage. Therein the court say: "The mortgage only affects the remedy against the mortgagor—the corporation." In *Adams* v. *Wallace,* 119 Cal. 67, [51 Pac. 14], the action was against an independent guarantor of a debt secured by mortgage. The court held that section 726 had no application to such an action, because it was on an independent contract to pay the debt upon the default of the principal debtor. To the same effect are *Carver* v. *Steele,* 116 Cal. 116, [58 Am. St. Rep. 156, 47 Pac. 1007]; *Kinsel* v. *Ballou,* 151 Cal. 754, [91 Pac. 620]. In *Commercial Bank of Santa Ana* v. *Kershner,* 120 Cal. 495, 498, [52 Pac. 848, 849], the supreme court say: "A debt may be secured by pledge, mechanics' lien, judgment lien, attachment, or otherwise, and yet the security may be reinforced by a mortgage on the same or other property." In *Scherhr* v. *Berkey,* 166 Cal. 157, [135 Pac. 41], the lessor of realty had taken as collateral security for the payment of the lease a chattel mortgage on personal property. Default having been made in the payment of the rents, an action was instituted against the assignee of the lessees in unlawful detainer and judgment recovered for restitution of the premises and three install-

ments of rent, which the court trebled. Thereafter plaintiffs instituted suit to foreclose the mortgage, and section 726 of the Code of Civil Procedure was pleaded in bar. But the supreme court held that it was perfectly proper to sue the lessee for rent and thereafter to foreclose the mortgage to obtain the amount of the damage, saying: "Clearly, section 726 of the Code of Civil Procedure cannot be applied to such a case as this. The liability of the lessees was one thing; the liability of their assignee a different, and distinct thing." To the same effect is *Ashcroft Estate Co.* v. *Nelson,* 26 Cal. App. 400, [147 Pac. 101]. The same interpretation has been given in an action of replevin. (*Harper* v. *Gordon,* 128 Cal. 489, [61 Pac. 84].) There the defense was made that an action in replevin would not lie because, under the provisions of section 726 of the Code of Civil Procedure the debt being secured by a mortgage, an action to foreclose the mortgage lien alone could be maintained. In answer to this the supreme court say (128 Cal., page 491, [61 Pac. 85]) : "The action here is clearly not to recover the debt, nor do we think it an action 'for the enforcement of any right secured by mortgage,' in the sense intended by the clause restricting the action, upon a debt secured by mortgage, to foreclosure. The action of replevin determines only the right of possession. . . . The object of foreclosure under section 726 of the Code of Civil Procedure is to enforce the lien by subjecting the property to sale."

In the amended answer of Samuel F. Randall it is alleged that the deed was originally given to the bank, at the request of Goggins, as collateral security for the payment of the purchase price of the lease note of Goggins, and this was found to be the fact by the trial court. It was then alleged that at the time of the extension of the lease note the plaintiff requested defendants Samuel F. and Amanda M. Randall to extend their security for a like period, and that the written agreement was then executed by said defendants at the special request of the plaintiff. If their liability was based upon the first allegation referred to and the finding of the court, then they were sureties. If their liability was based upon the latter allegation referred to, then they were guarantors. If the defendants' liability was that of sureties, then they might demand that the plaintiff first seek recovery against the principal debtor, Goggins. (Civ. Code, sec.

2845.) If, on the other hand, their liability was that of guarantors, the plaintiff might elect either to sue them first or to sue the principal debtor without going into equity to foreclose the mortgage. [3] If he first sued the principal debtor, he was not subsequently barred from bringing suit in foreclosure. (*Adams* v. *Wallace*, 119 Cal. 67, 70, [51 Pac. 14]; *Withers* v. *Bonsfield*, 42 Cal. App. 304, [183 Pac. 855]; *Pierce* v. *Merrill*, 128 Cal. 464, 470, [79 Am. St. Rep. 56, 61 Pac. 64]; *San Francisco Theological Seminary* v. *Monterey County Gas & Electric Co.*, 179 Cal. 166, [175 Pac. 693].) Thus the rule in this state as to section 726 clearly is that this section applies to the primary debtor and was enacted for his benefit; that it does not apply to an individual guarantor or surety, or to a subsequent indorser upon a promissory note, nor in fact to any case where there is no privity of contract existing between the two obligations—that is, where the primary debt and the obligation under the mortgage are separate and distinct obligations. The trial court, therefore, was in error when it gave judgment for defendants upon this special defense.

For the reasons given the judgment must be reversed and the cause remanded for a new trial. It should not be implied from this, however, as fairly it might be, that plaintiff should have judgment on the issues framed by the pleadings. The complaint alleges that suit was instituted against Goggins and prosecuted to judgment in the sum of $6,521.89, and the amended answer alleges that prior to the institution of said suit Goggins voluntarily surrendered to plaintiff all the personal property covered by the lease note. The judgment-roll in the suit referred to was admitted in evidence without objection, and therefrom it appears that plaintiff sued Goggins for the rentals accruing under the note and for damages arising out of the breach of the contract.

The allegations of the amended answer are that the deed was given as collateral security for the payment of the purchase price of the stock. The written undertaking executed by the defendants recites that the deed is given as collateral security for that certain lease note for $3,375 and accrued interest. The court found that the deed was executed "as security for the payment of the note," and that at the time of its execution the defendants understood that

it was to be held as security "for the payment of the purchase price of the personal property purchased by F. J. Goggins."

[4] It is elementary that a guarantor cannot be liable beyond the express terms of the contract of guaranty. (*San Francisco Theological Seminary* v. *Monterey Co. Gas & Electric Co.*, 179 Cal. 166, [175 Pac. 693].) A surety has all the rights of a guarantor (Civ. Code, sec. 2844), and cannot be held beyond the express terms of his contract. (Civ. Code, sec. 2836.) Thus, whether the Randalls were guarantors or sureties, the limit of their liability, as shown by the findings of the trial court, was the purchase price of the property, and this could not be extended to cover rentals accruing under the terms of the lease or damages for the breach of the contract. [5] In taking back the stock the plaintiff treated the contract of sale as at an end. He was then required to make his election as to which remedy he would pursue—to stand upon his contract and sue for the breach, or to treat the contract as ended and sue for the rescission. He could not pursue both remedies. (*House* v. *Piercy*, 181 Cal. 247, [183 Pac. 807].) [6] Having elected to treat the contract of sale as at an end, he could not thereafter sue for the purchase price of the stock, and, if the liability of the defendants in this case was limited to the payment of the purchase price, it would seem that the plaintiff by terminating his contract has lost his right of action to enforce the security of the mortgage. Though the character of the prior action was properly put in issue, this point was not urged before the trial court, and it is not argued upon this appeal. What is said herein regarding it is said merely by way of suggestion for the assistance of the parties and the trial court upon the retrial of the action, and not as determinative of the rights of the parties upon such new trial.

The judgment is reversed.

Langdon, P. J., and Brittain, J., concurred.