[Civ. No. 1691. Fourth Appellate District.—February 23, 1939.]

SECURITY–FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Corporation), as Trustee, et al., Appellants, v. CHARLES C. CHAPMAN et al., Respondents.

Forgy, Reinhaus & Forgy, Gibson, Dunn & Crutcher, A. M. Bradley, Ira C. Powers and Frederic H. Sturdy for Appellants.

W. M. Conley, Philip Conley, Matthew Conley, R. Z. Lamberson and Conley, Conley and Conley, as *Amici Curiae*, on Behalf of Appellants.

Drumm, Tucker, Martell & Drumm, E. O. Leake, J. J. Leake and Sam L. Collins for Respondents.

BARNARD, P. J.—This is an appeal from a judgment of dismissal following the sustaining of a general demurrer to a fourth amended complaint in an action based upon a stockholder's liability.

From the allegations of the amended complaint it appears that the Alexandria Hotel Realty Corporation, which will be referred to as the hotel corporation, owned and held seven separate leasehold interests covering contiguous city property in the city of Los Angeles, on which adjoining and connecting buildings had been erected and were maintained under the name of the Alexandria Hotel. On May 1, 1927, the hotel corporation executed and delivered to the predecessor of the plaintiff bank, as trustee, a trust indenture which is alleged to be "a mortgage, deed of trust, assignment and instrument of pledge", securing bonds to the amount of $1,350,000. For convenience the parties in their briefs have referred to this trust indenture as a mortgage and, for the sake of brevity, we will do the same in this opinion. The property thus conveyed to the trustee or mortgagee as security for these bonds, and making up the trust estate, included these seven leasehold interests, and also a certain sublease from the hotel corporation to two individuals, covering the hotel building, together with a chattel mortgage on the furniture, furnishings and equipment of the hotel given to secure this sublease.

The mortgage contained a provision that nothing therein should prevent the hotel corporation from selling the entire trust estate to any person or corporation, provided that such sale should not impair the lien and security of the mortgage or any rights of the trustee or of the bondholders, and provided further that the person or corporation acquiring the trust estate should by a writing deposited with the trustee expressly assume the payment of the bonds then outstanding and secured thereby. On June 10, 1930, the hotel corporation sold and assigned the trust estate to the Santa Ysabel Land Company, which will hereinafter be referred to as the land company, and of which the defendants herein were then the stockholders. This assignment recited that it was made subject to "the lien" of the mortgage (describing it) securing the bond issue, "which said bonded indebtedness the said Santa Ysabel Land Company hereby expressly assumes and

agrees to pay''. The land company executed and delivered to the trustee an acceptance reciting that it ''hereby accepts the foregoing assignment subject to all of the terms, covenants, and conditions of that certain trust indenture'', and after describing the trust indenture given to secure this bond issue the acceptance goes on to state that the land company ''hereby expressly assumes and agrees to pay the bonds secured by said Trust Indenture now outstanding in the aggregate principal sum of $1,292,500.00'', together with interest, ''and further undertakes and agrees to perform each and all of the covenants and conditions in said Trust Indenture which were to be performed by'' the hotel corporation. A resolution adopted by the board of directors of the land company, containing similar recitals, was also furnished to the trustee. It is alleged that pursuant to such agreement the land company entered into possession of the leasehold estate and exercised all rights of ownership over the same for over seventeen months and that on or about November 21, 1931, the land company ''duly and regularly sold, assigned, transferred, conveyed and set over'' the trust estate to the Spring Street Properties, Inc., a corporation.

It is then alleged that defaults in various respects existed on May 1, 1933; that these defaults were not remedied; that the trustee, in compliance with the terms of the trust indenture, elected on May 16, 1933, to declare the whole indebtedness represented by the outstanding bonds to be due and payable; and that no part of the principal or interest of the outstanding bonds or the indebtedness or liability incurred by the land company by its assumption agreement and no part of the indebtedness of the defendant stockholders had been paid. The plaintiff bank sued as trustee for and on behalf of the holders of all outstanding bonds, and the individual plaintiffs sued as a bondholders' committee holding such bonds of the par value of $813,500. It is not alleged that there had been any foreclosure or sale of any of the trust estate, given as security for the bonds.

The first question presented is whether the stockholders of such an assuming corporation are entitled to have the security represented by the mortgaged property exhausted before a personal action is brought against them on their stockholders' liability. It seems that this question has not been directly decided in this state. The appellants contend

that it has been uniformly held that the provisions of section 726 of the Code of Civil Procedure, or the corresponding right in the case of a trust deed (see *Bank of Italy etc. Assn.* v. *Bentley,* 217 Cal. 644 [20 Pac. (2d) 940]), are available only to a mortgagor corporation and are no defense to an action on the independent liability of its stockholders; that the land company, the assuming corporation here, stepped into the shoes of the mortgagor corporation and, like that corporation, was personally liable for the full amount of the bonds; that the stockholders of the land company are equally liable for the full amount of that debt; and that, like the stockholders of a mortgagor corporation, these stockholders are not entitled to the benefit of section 726 or to have the security first exhausted.

While, ordinarily, a personal action may not be brought upon a debt secured by a mortgage or deed of trust without first exhausting the security, there are certain well-established exceptions to this rule. Where a third party guarantees such a debt an action may be maintained against the guarantor without exhausting the security since the guaranty constitutes an obligation independent of the secured debt. (*Birkhofer* v. *Krumm,* 4 Cal. App. (2d) 43 [40 Pac. (2d) 553]; *Loeb* v. *Christie,* 6 Cal. (2d) 416 [57 Pac. (2d) 1303].) It has also been held that the stockholders of a corporation mortgagor may be sued for the amount of the mortgage debt irrespective of any foreclosure or sale. (*Knowles* v. *Sandercock,* 107 Cal. 629 [40 Pac. 1047]; *Niles State Bank* v. *Jennings,* 22 Cal. App. 66 [133 Pac. 329]; *Aronson & Co.* v. *Pearson,* 199 Cal. 286 [249 Pac. 188, 51 A. L. R. 1380]; *Title Ins. & Tr. Co.* v. *Torrance,* 10 Cal. App. (2d) 416 [51 Pac. (2d) 1123].) The reasons given for so holding are that a stockholder has a separate and distinct liability under the constitutional and statutory provisions imposing such liability, as they formerly existed; that in accepting ownership of his stock a stockholder offers, in effect, to make payment proportionately to any future creditor of the corporation during his ownership; that his statutory liability is primary and independent of the liability of the corporation upon the debt; that this liability of the stockholder, within its extent, is in the nature of a continuing guarantee of and for debts contracted by the corporation; and that since the mortgage only affects the remedy against

the mortgagor corporation the stockholder may be sued upon his independent liability without foreclosing the mortgage (*Aronson & Co.* v. *Pearson, supra*). In each of these exceptions to the general rule a personal action, without exhausting the security, is permitted because the obligation sued upon is separate and distinct from that of the secured debt.

It may be conceded that the nature of the liability of the stockholders of this assuming corporation depends upon the position and situation of the corporation itself. If, as the appellants contend, the assuming corporation stands in all respects in the shoes of the mortgagor corporation, being liable for the entire debt in exactly the same way that the mortgagor corporation was liable for it, and with the existence of security merely invoking a procedural rule affecting the remedy against the corporation, it might well follow that its stockholders are in the same position as would be the stockholders of the mortgagor corporation and that they are liable as guarantors under their statutory liability, irrespective of the mortgage. If, however, the position of the assuming corporation differs from that of the mortgagor corporation, a corresponding difference in the situation of its stockholders may well result. The fact that the assuming corporation is, in a sense, liable for the entire debt is not, in itself, conclusive since that liability may be contingent and since it arises under a separate contract (the assumption agreement) and may be governed thereby.

In some of the earlier cases (e. g., *Biddel* v. *Brizzolara,* 64 Cal. 354 [30 Pac. 609]) it was held that the liability of a mortgagor is only to pay any deficiency after foreclosure and sale. In *Loeb* v. *Christie, supra,* in passing upon the obligation of a guarantor, it was held that the obligation of the maker of a note and mortgage is for the face of the note and not for the deficiency after foreclosure. In *Birkhofer* v. *Krumm, supra,* we said:

"The more logical rule is formed by a consolidation of the first and second theories we have been considering. By so doing we arrive at the following: That the land furnishes the principal or primary fund for the payment of the mortgage debt; that as between the grantor and grantee, the grantee becomes the principal and the grantor the surety for the deficiency remaining after applying the money derived

from the sale of the land on the debt; that from the point of view of the mortgagee both the grantor and the grantee stand in the relation of sureties for the payment of the deficiency to the mortgagee. A surety may require his creditor to exhaust the principal fund to lighten the surety's burden before proceeding against the surety personally. (Sec. 2845, Civ. Code; *Murphy* v. *Hellman etc. Bank,* 43 Cal. App. 579 [185 Pac. 485].) This reasoning brings us to a point where the rules we have announced governing the relations of the mortgagor, his grantee and the mortgagee are in strict harmony with the provisions of section 726 of the Code of Civil Procedure and the multitude of decisions which hold that the mortgagee must exhaust the security before he can recover against his debtor and that this recovery must be limited to the deficiency remaining after applying the funds derived from the sale of the property on the debt."

█ While the liability of both the mortgagor and the assuming grantee is for the debt secured by the mortgage it must be enforced by foreclosure, and a deficiency judgment may be entered only after exhausting the security. (*Roberts* v. *Fitzallen,* 120 Cal. 482 [52 Pac. 818].) To the extent above noted the mortgagor corporation and the assuming corporation stand in the same position.

The mortgagor corporation is directly liable on the original debt it incurs without regard to the mortgage it gives as security. Its right to have the security exhausted arises not from the contract through which the debt was incurred, but by the operation of a procedural statute limiting the remedy of the mortgagee.

In the case of an assuming corporation it does not create the debt but assumes it as it is. Its main contract is to assume the mortgage and although it agrees to pay the debt the latter agreement is incidental to the former and is but a part of the entire agreement. The provisions of section 726 must be read into any assumption agreement and become a part of it. (*Lewis* v. *Hunt,* 133 Cal. App. 520 [24 Pac. (2d) 557].) The right to have the security exhausted is included in the contract under which the obligation of the assuming corporation is created and limits the obligation which is assumed. Such a corporation agrees to become liable for the debt as it then stands, including any rights conferred by the existing mortgage and with the mortgaged property

constituting the primary fund for the payment of the debt. While the assuming corporation agrees to protect the mortgagor corporation in the matter of paying the debt, it has a contractual right to the benefit of the security, there is an implied agreement that it will pay any deficiency remaining after the exhaustion of that security and, in a real sense, its agreement is "merely one to pay the amount of such deficiency judgment as might be entered after the foreclosure of the mortgage and the sale of the mortgaged premises". (*Robson* v. *O'Toole,* 45 Cal. App. 63 [187 Pac. 110].)

In the case of a mortgagor corporation which incurs a debt, to secure which a mortgage has been given, the stockholders have been held liable on an independent obligation to pay that debt although under a procedural rule the creditor's remedy against the corporation was more limited. In the case of an assuming corporation the stockholders are in a somewhat different position since that corporation, in incurring the obligation has limited the same by its contract of assumption and has made the right to have the security exhausted a part of its contract and a condition of its liability on the debt. It follows that the independent statutory liability of its stockholders is for the exact obligation incurred by the corporation and not for something different and greater.

While the assuming corporation steps into the shoes of the mortgagor corporation it steps in not only as to a possible liability for the whole debt, but also as having the right to have the security exhausted; this right being an essential part of its contract which, like an agreement to assume any other contract, is merely to assume the obligation as it then exists and to carry out the contract of the mortgagor, of which the mortgage is an essential part. Its real position is that of an indemnitor rather than that of a guarantor. (*Lewis* v. *Hunt, supra; Biddel* v. *Brizzolara, supra; Small* v. *C. R. Rogers Productions,* 11 Cal. App. (2d) 191 [53 Pac. (2d) 774]; *Shuey* v. *Mulcrevy,* 34 Cal. App. 218 [166 Pac. 1019].) The appellants concede that no personal judgment could have been rendered against the land company without a foreclosure and sale, and the reason for this is not alone the fact that under section 726 the remedy of the mortgagee was limited but also because its liability was thus fixed by the contract under which its obligation was created.

 Viewing the matter from another angle, while as between them the assuming corporation becomes the principal and the mortgagor corporation the surety, as to the mortgagee the assuming corporation stands in the position of a surety for the payment of any deficiency. (*Birkhofer* v. *Krumm, supra.*) In assuming the mortgage and agreeing to pay the debt the assuming corporation is not only contracting in view of the existing mortgage, with a right to all of its benefits as well as being subject to its obligations, but it is, by its contract, assuming the position of a surety with the right of a surety to have the security first exhausted. While, in a sense and contingently, the assuming corporation is liable for the full debt, in creating its obligation it assumed something less than the burden originally assumed by the mortgagor corporation and, in effect, merely contracted to become a surety. Its stockholders, as continuing guarantors of its obligations under their stockholders' liability, are guarantors of its obligation as a surety only, and are consequently entitled to have the security first exhausted.

 It is next contended that under the terms of the mortgage instrument, made applicable to both the mortgagor corporation and its grantee, each of these corporations expressly waived the right to have the security exhausted and granted to the trustee the right to commence an action and obtain a judgment for the full amount of the bonds before foreclosure. It is first argued that the provisions of section 726 of the Code of Civil Procedure are remedial and procedural, intended solely for the benefit of the mortgage debtor, and may be waived by the debtor. In support of this contention the appellants cite *Murphy* v. *Hellman Com. Bank,* 43 Cal. App. 579 [185 Pac. 485], *Martin* v. *Becker,* 169 Cal. 301 [146 Pac. 665, Ann. Cas. 1916D, 171], *Western Fuel Co.* v. *S. G. Lewald Co.,* 190 Cal. 25 [210 Pac. 419], and *Bank of Italy etc. Assn.* v. *Bentley,* 217 Cal. 644 [20 Pac. (2d) 940]. While some of these cases contain statements suggesting that such a right of waiver might exist such statements are in each instance *dicta,* and none of these cases goes farther than to hold that where the parties had an independent right, under a separate agreement not connected with the mortgage, the provisions of section 726 did not prevent them from exercising their right under the other agreement. Assuming that under some circumstances a mort-

gagor might waive the benefit accruing to him under section 726, his right to waive the applicability of the section, in advance, by providing in the original mortgage that the mortgagee should be free from the limitations of this section, made applicable to all mortgages in this state, may well be questioned. However, we are not called upon to decide this question here.

It is argued that the right to have the security exhausted was here expressly waived because of section 15 of article IX of the mortgage instrument. That section provides that in the event of a default in one or more respects the mortgagor agrees, upon demand of the trustee, to pay the amount which shall then be due and payable on all such bonds; that in case it shall fail to pay the same forthwith the trustee shall be entitled to recover a judgment for the whole amount so due and unpaid; that "The Trustee shall be entitled to recover judgment as aforesaid before or after or during the pendency of any proceedings for the enforcement of the lien of this indenture upon the trust estate"; that the right of the trustee to recover such judgment shall not be affected by any entry or sale thereunder; and that "The powers granted to the Trustee by this section, however, are expressly subject to the limitations prescribed by section 21 of this Article." Section 21 of that article, so far as material here, reads as follows: "Notwithstanding the foregoing provisions of this Article, the powers hereby granted to the Trustee are strictly subject to the limitations that if, by the commencement of any action at law to recover judgment for any amount due and unpaid hereunder or upon the bonds secured hereby, . . . (the lien of this indenture) . . . would, . . . be surrendered, waived, or lost, the Trustee shall have no power to commence such action at law . . . But in case any statute now in force . . . prohibiting the exercise of any other remedy prior to or concurrently with proceedings to enforce the lien of a mortgage upon the premises mortgaged . . . shall hereafter be repealed or cease to be in force, such statute shall not be deemed to have become or to be a part of the contract contained in this indenture."

The right to sue without foreclosure is thus made expressly subject to the provisions of section 21. In effect, it is there provided this may not be exercised if the commencement of an action at law to recover judgment would result in the

security being waived, or lost. The main purpose of this provision appears to be that nothing shall be done to jeopardize this security. If the mortgagor could, in advance, waive the right to have the security exhausted it might well be held that the mortgagee, in accepting and acting upon the waiver, was electing between the security and the right to secure a personal judgment and the security might be lost. (*Jones* v. *Maria*, 48 Cal. App. 171 [191 Pac. 943].) The section goes on to provide that in case any existing statute prohibiting any other remedy than the foreclosure of the lien should later be repealed such statute should not be deemed a part of the contract. Reading these sections of the mortgage instrument in relation to their context it seems to have been the intention to provide that in the event of a future change in the law the mortgagee should not be bound by the law existing at the time the instrument was executed, but should be entitled to the benefit of any such change. This is a reasonable interpretation of the language used and the trial court was entitled to so interpret the instrument. Aside from other considerations, it does not appear from the face of the complaint that the right to have the security exhausted was expressly waived. The parties contracted in view of the existing law and the terms of their agreement disclose an intent to secure the benefit of any change in that law rather than an attempt to evade it by providing in advance that the contract should not be subject thereto.

The last point requiring consideration is appellants' contention that this action could be maintained without foreclosure since the security had become and has remained valueless. In this regard the amended complaint alleged "that subsequent to the execution of such trust indenture the value of all of the said property mortgaged . . . for security for said bonded indebtedness declined, and, prior to the commencement of this action, had depreciated to such an extent that the same was entirely without value". It is then alleged that the rental due under the leases and the taxes were more than $25,000 a year in excess of the annual rental value of the property; that during the year preceding the commencement of this action the operating income of said hotel did not exceed the operating expense thereof; that by reason of the fact that defaults existed in the payment of rent under the leases and in the payment of taxes the leasehold

interests assigned by the trust indenture did not possess any market or other value; that each of the seven leases assigned by the trust indenture was cancelled, three under notices of default served prior to the commencement of this action, and four by notices filed a few months later; that all seven leases were formally cancelled and forfeited in unlawful detainer actions by judgments entered some months after this action was brought; that in March, 1933, the hotel building on the leased premises was severely damaged by an earthquake and had not been repaired at the time this action was commenced; and that by reason of the fact that the leaseholds had become valueless ''as aforesaid'' no security for the debt remained.

The appellants contend that the general allegation that the security had become valueless was in itself sufficient to require the overruling of the demurrer, since it is well settled that when the security of a mortgage becomes valueless no foreclosure is necessary prior to bringing a personal action, and that it further appears from the other allegations that the security had in fact become valueless.

In support of the first of these contentions these cases are cited: *Toby* v. *Oregon Pac. R. R. Co.*, 98 Cal. 490 [33 Pac. 550]; *Merced Bank* v. *Casaccia*, 103 Cal. 641 [37 Pac. 648]; *Savings Bank* v. *Central Market Co.*, 122 Cal. 28 [54 Pac. 273]; *Otto* v. *Long*, 127 Cal. 471 [59 Pac. 895]; *Crescent Lbr. Co.* v. *Larson*, 166 Cal. 168 [135 Pac. 502]; *Western Fuel Co.* v. *S. G. Lewald Co.*, *supra; J. I. Case T. M. Co.* v. *Copren Bros.*, 32 Cal. App. 194 [162 Pac. 647]; *Dyer Law & Col. Co.* v. *Abbott*, 52 Cal. App. 545 [199 Pac. 340]. Without reviewing these cases in detail it may be observed that they were cases where no mortgage lien had ever existed, where the mortgaged property had been sold in some court proceeding, where the pleadings raised no issue regarding security for the debt, or where the property had actually been sold under a power of sale. In *Otto* v. *Long, supra,* in discussing the case of *Barbieri* v. *Ramelli,* 84 Cal. 174 [24 Pac. 113], the court said: ''In effect, this is saying that a foreclosure and sale is the special mode provided for determining whether there is anything for a particular mortgagee in the property subject to the lien. . . . To inquire whether there is such property as that which the

mortgage purports to cover, or whether, for any reason, it failed to create a lien, is not to violate the rule announced in *Barbieri* v. *Ramelli, supra,* nor the policy of the statute. If it can be made to appear that there is no such property as that which the mortgage purports to describe, it would demonstrate that there was no lien, and the debt would not be one secured by mortgage.'' Where mortgaged property has been destroyed or sold and is no longer in existence, so far as the mortgagee is concerned, there is little doubt that a personal action may be maintained without going through the empty form of foreclosing the mortgage. But where the property is still in existence and it is claimed to be value-less because of other liens and claims, the case last referred to seems to hold that a foreclosure and sale is the proper mode for determining whether the security has, in fact, become valueless. To permit a mortgagee to bring and maintain a personal action by merely alleging his conclusion that the mortgaged property, on which he still holds a lien interest which has never been disturbed, is valueless, or more accurately that it will eventually become so, would be not only to disregard the statute but to allow the mortgagee to substitute his judgment of the value for the mode of determining that fact established by law. Assuming that this should be permitted in any case it should not be allowed where, as here, the facts from which the mortgagee draws his general conclusion are specifically set forth. This is especially true if the facts alleged are inconsistent with the general allegation. (*Little* v. *Union Oil Co.,* 73 Cal. App. 612 [238 Pac. 1066].)

While the allegation that the property had become valueless might, in a proper case, be considered as an allegation of fact rather than a conclusion, we think it cannot be so taken here where the facts upon which it is based are so clearly alleged. The real question presented is whether the factual allegations are sufficient to show that the security was valueless at the time the action was brought.

Looking to the amended complaint, it appears that because of defaults in the payment of rent and taxes, notice of cancellation of the various leases had been given. In the case of four of the leases this notice was given more than three months after this action was begun. In three instances this notice was given about two weeks before the action was be-

gun, but in accordance with the terms of those leases the lessee had thirty days in which to remedy the default, which time did not expire until after the action was brought. Judgments cancelling the leases were entered, the earliest six months and the latest eight months after the action was brought. It appears that at the time the action was brought some time remained in which to remedy the defaults under these leases, and in the light of human experience it cannot be said that it affirmatively and conclusively appears that the security represented by the assignment of the leases was entirely valueless. Even a short time is sometimes sufficient to turn an unprofitable business enterprise into a profitable one. While it is alleged that the building had been damaged, the leases had then been assigned to the Spring Street Properties, Inc., and it is not alleged that this corporation was unable to repair the building or that repairs were not then being made.

It is alleged that the trust indenture provided that the mortgagor would pay to the trustee as a sinking fund, between May 1, 1932, and April 30, 1933, the sum of $60,000. And further, that the mortgagor would at all times keep on deposit with the trustee in a special rent fund, in cash, in securities of the United States, the state of California or any city in this state, or any bonds certified as a legal investment for savings banks, an amount equal to six months' rent next due under the seven leases, which amount was between $25,000 and $30,000. It is not alleged that these agreements were not kept and presumably the trustee had such amounts or such securities in his possession.

One of the things transferred to the trustee under the trust indenture and comprising a part of the trust estate, was a chattel mortgage on all the furnishings of the hotel. It is alleged in the complaint that Spring Street Properties, Inc., claiming to have cancelled the sublease had noticed for sale and sold the hotel furnishings covered by the chattel mortgage, selling the same for $40,000; that the appellant bank, as trustee, had filed an action for the purpose of establishing that it was the owner of the mortgagee's interest in this chattel mortgage, and that said action was still pending. It not only appears from the allegations of the complaint that the trustee still held this chattel mortgage covering the furnishings of this hotel, as a part of the trust estate and as a part of

the security given for the bonds, but the fact that the trustee is still the legal owner of that chattel mortgage has since been judicially established. (*Security-First Nat. Bank* v. *Spring Street Properties, Inc.*, 20 Cal. App. (2d) 618 [67 Pac. (2d) 720].) While the appellants argue that this chattel mortgage is to be considered a pledge and not a part of the mortgage security, the fact still remains, in spite of any fine distinctions, that this chattel mortgage represents a very considerable asset which is still in the hands of the trustee and which was turned over as a part of the security for the debt here sued upon.

In our opinion, the court correctly held that the facts. alleged were not sufficient to show that the security given was entirely valueless.

For the reasons given the judgment is affirmed.

Griffin, J., concurred.

Marks, J., deeming himself disqualified, did not participate in this opinion.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 24, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 24, 1939.