[Civ. No. 8031. First Appellate District, Division Two.—February 2, 1932.]

IVAN R. BEAN, Respondent, v. WILLIAM H. REICKER et al., Defendants; H. A. TURNER, Appellant.

J. E. White for Appellant.

Louis Ferrari, Tobias J. Bricca and C. H. White for Respondent.

STURTEVANT, J.—The plaintiff commenced an action to recover the deficiency after having foreclosed a deed of trust. The defendant H. A. Turner answered. The trial court made findings in favor of the plaintiff and from the judgment entered thereon the defendant has appealed and has brought up a bill of exceptions.

On September 25, 1922, William H. Reicker and his wife owned lots 2 and 3, Hosler Tract, in Butte County. On that date they executed a promissory note which is as follows:

"$8,000.00          Chico, California, Sept. 25, 1922.

"On or before the 25th day of September, A. D. one thousand nine hundred twenty-seven, at or before three o'clock p. m. of that day, and for value received in lawful money of the United States, we, jointly and severally promise to pay to the Butte County National Bank of Chico, national banking association, duly incorporated and doing business as such, or to its order, at its office, the principal sum of eight thousand dollars ($8,000.00) in installments as follows: One thousand dollars ($1,000.) payable September 25, 1923, one thousand dollars ($1,000.) payable September 25, 1924; one thousand dollars ($1,000.) payable September 25, 1925; balance of principal payable on or before September 25, 1927. And we further promise to pay interest on said principal sum from date until paid at the annual rate of six per cent (6%) to said The Butte County National Bank of Chico, at its office in the manner following, to-wit: Semi-annually, and any installment of interest not paid as it becomes due shall be compounded semi-annually and thereafter bear interest at the same rate. And we further promise to pay both principal and interest in lawful money of the United States, waiving any right which we may have now or hereafter, to pay the same in any other currency. And further, we agree that in case of default in the payment of any of the amounts of principal or interest or installments above stipulated and at any time during such default, the entire unpaid balance of said principal sum shall become immediately due and payable, if the holder of this note shall so elect. This note is secured by Deed of Trust of date September 25, 1922.

"WILLIAM H. REICKER,
"MAUDE REICKER."

And at the same time they executed a deed of trust to secure the payment of the note. The note and trust deed were assigned by the Butte County National Bank to the Bank of Italy and the latter assigned it to the plaintiff. In the latter part of June or the first part of July, 1924, H. A. Turner commenced negotiations to purchase the above-mentioned lands. At that time the interest was due and payable in the sum of $406.67 and the $1,000 payable September 25, 1923, had not been paid. He called at the bank and held a conversation with its manager, Mr. Troxell. Mr. William-

son, another officer of the bank, was present and heard the conversation. Mr. Turner asked to see the Reicker note. It was shown to him and the balance due on the note was stated. Mr. Turner then stated that if he purchased the lots he would arrange to assume the mortgage. He was given directions at his request as to how he could locate the lots and examine them. Thereupon Mr. Turner left the bank and returned on the same date. He then stated that he had examined the lots and that he was pleased with them. He also stated that he would purchase them and if he did so he would assume the mortgage and make the payments on the note. On July 20th Mr. Turner wrote the bank: "Referring to the forty acre prune ranch, to-wit Lots 2 and 3 Hosler Tract, if I buy this place will you be satisfied with $1000 payment this year said payment to be deducted from the mortgage of $8000. Taxes and interest will be paid to date by present owner." In that same letter Mr. Turner proceeds to state facts showing that he was the owner of many pieces of property. On July 23d, the bank wrote Mr. Turner: "If you buy the forty acre prune ranch known as Lots 2 and 3 of the Hosler Tract on which this bank has a mortgage of $8000 we will be satisfied with a payment this fall of $1000 providing taxes and interest are paid to the date of transfer by the present owner and also providing that you put down a well for irrigation purposes and make the contemplated improvements on the property." On July 29, 1924, Mr. Turner wrote: "I am taking the forty acres, to-wit Lots 2 and 3 Hosler Tract, *subject to the $8000 mortgage.* The taxes are to be paid to July 1, 1924, the interest to be paid to August 1, 1924." On August 12, 1924, the bank wrote Mr. Turner: "This will answer your letter of the 11th. We received on August 8th interest up to and including the first of the month on account of William H. Reicker. This money came from the Oakland Title Insurance Company. We would appreciate your sending us your draft for $1000 to apply on account of the principal of the note at your early convenience." On September 25, 1924, Mr. Turner wrote: "Re the forty acre prune ranch known as Lots 2 and 3 of the Hosler Tract, on which you have a mortgage for $8000. . . . I am enclosing a check signed by my wife for $800 to apply on the principal." On September 27, 1924, the bank wrote Mr. Turner: "Receipt is

acknowledged of a check of Agnes M. Turner for $800 to be applied on account of principal of the note of William H. Reicker. We inform you that the interest due to September 25, 1924, is $69.70. We also note that you will send us the balance of the $1000 payment, namely $200, within a period of ten days and also that you will pay another $1000 within six months. After the payment of the second $1000 mentioned there will be no more principal due on the note until September 25, 1925. Interest, however, is due semi-annually on March 25th and September 25th." On October 6th Mr. Turner wrote: "Re Lots 2 and 3 Hosler Tract, I enclose according to my promise $269.70, check of M. Agnes Turner, to apply as follows: $200 on the principal leaving a balance of $7000 and $69.70 to apply as the interest to September 25, 1924." On March 4, 1925, Mr. Turner wrote: "Re Lots 2 and 3, Hosler Tract, I am enclosing a check signed by M. Agnes Turner for $500. Please deduct this from the principal, $7000, of the mortgage which you hold against the property. . . Kindly send receipt stating that the balance remaining of the principal is $6500." On March 5, 1925, the bank wrote: "We acknowledge receipt of your check for the sum of $500 which is to be applied on account of principal on the note given to us by W. H. Reicker secured by a mortgage on lots in the Hosler Tract. As soon as the check has been collected we will forward you the proper receipt for the money." On March 9, 1925, the bank wrote: "We acknowledge receipt of your check for $500 and have applied same as per your request. . . . This leaves a balance due on principal of $6500 and interest to the amount of $208.23 due on semi-annual date March 25, 1925." On June 26, 1925, Mr. Turner wrote: "Re Lots 2 and 3, Hosler Tract, I am enclosing a check of $300. Please apply same on the principal of the mortgage. This will leave a balance of $6200." On July 26, 1925, Mr. Turner wrote: "Re Lots 2 and 3, Hosler Tract, I enclose check for $200 to be deducted from the principal of the mortgage. This will leave a balance of $6000." On July 28, 1925, the bank wrote: "We acknowledge receipt of the check $200 sent in your letter of the 26th which we have applied on account of your note on the Hosler lands. You are correct, the balance on the note is now $6000." On September 29, 1925, Mr. Turner.

wrote among other things: "So I am now sending you the interest only, to-wit, $193. I will send you the $1000 a little later on." On November 17, 1925, the bank wrote Mr. Turner regarding the claim of N. C. Jessee in the sum of $1252.07 for sinking a well, and his threat to file a lien on the property. On January 26, 1926, Mr. Turner wrote: "Mr. Jessee has taken proceedings to collect $1252.07 for digging the well. At the present time I cannot pay this. The forty acres has cost me in cash up to the present time over $6000. If you can help me in some way I will try to hold the orchard otherwise I shall be compelled to lose it. If you can make out a new mortgage for $6000 plus the cost to Jessee, the mortgage at seven per cent payable $1000 per year, I could keep the orchard. . . . If you can do the above I could pay the taxes and interest to date." On February 4th, Mr. Turner wrote: "Re Lots 2 and 3, Hosler Tract, if I can raise the money to pay for the well which is over $1300, would you be willing to make a new loan of $6500, three years, seven per cent, and cancel the present one? . . . Better than the above would be a letter from you stating that the present loan could stay as it is for two years from the next interest date so long as the interest is paid when due and the taxes paid on due date." On May 1, 1926, Mr. Turner wrote: "I have received a letter from Mr. Guy Kennedy stating that Mr. Jessee will settle in full for $700. This is satisfactory to me for I consider that this is about a fair price for the well. Now that this is settled will you please send me a statement of the balance of the mortgage and the interest due as I wish to pay the interest. . . . I am unable to pay any of the principal before September. I trust this will be satisfactory to you."

The complaint refers to a trust deed instead of a mortgage. Whatever it was the document does not appear in the record. That lots 2 and 3 of the Hosler Tract were conveyed by the Reickers is clear but the conveyance is not contained in the record. Mr. Turner testified that the deed was made out to Mrs. Turner and that all moneys were paid by check signed by her. He also testified that he never signed any writing promising to pay the bank any money and that he was told that the security was a mortgage and that he did not know it was a trust deed until this action was commenced. He also

testified that he did not tell Mr. Troxell that he would pay the $8,000 note or that he would assume the mortgage.

The action was commenced on January 7, 1928.

■ The defendant asserts that the trial court erred in overruling his demurrer to the second amended complaint. The demurrer was based on the grounds (1) that the complaint did not state facts sufficient, and (2) that it was ambiguous, etc. Neither attack was good. The liability of the defendant could be created by an express contract or an implied contract. (41 C. J. 721.) The plaintiff pleaded "That in July, 1924, the defendant H. A. Turner purchased the lands near Chico, California, securing said note and that at said time of purchase had actual knowledge of said $8000 encumbrance; that before the maturity of said note and for a valuable consideration he assumed said obligation of $8000 personally and agreed to pay it. . . . " That was a sufficient pleading of the ultimate facts. Continuing the plaintiff pleaded additional facts. Those facts were attacked as being ambiguous, etc. As they were mere surplusage the proper attack was a motion to strike out, but none was made.

■ It is contended that the plaintiff's case falls within the statute of frauds. The point is not an open one in this state. (*White* v. *Schader,* 185 Cal. 606, 608 [21 A. L. R. 499, 198 Pac. 19]; 27 C. J. 161.) The point is brought about by reason of a misconception of the relation of the facts. In the case of *Herrin* v. *Abbe,* 55 Fla. 769 [18 L. R. A. (N. S.) 907, at page 910, 46 South. 183, 185], the Supreme Court of Florida said:

"The testimony relates to the consideration of the deed, and was clearly admissible on that ground, since the deed does not purport to be complete in stating the consideration.

"A promise by the purchaser of lands that are subject to a mortgage to assume and pay off the encumbrance as a part of the consideration or purchase price is not required to be in writing, because it is not a promise to pay the debt of another, but it is a promise to pay to a third party the debt the grantee owes to the grantor. The fact that in thus paying his own debt the grantee incidentally discharges the debt of his grantor does not bring the promise within the statute of frauds. (Citing cases.)"

Neither may it properly be said that there was no consideration for the alleged promise. In 2 Jones on Mortgages, eighth edition, section 938, the auditor says: "An agreement by the purchaser to assume and pay a mortgage on the premises must be supported by a consideration in order to be valid. But the consideration may be implied from the circumstances, and the deduction of the amount of the mortgage debt from the purchase-price is a sufficient consideration. An extension of time of payment may also be a sufficient consideration for the assumption of personal liability." To the same effect, see 41 C. J. 727, 744. As we have recited above there was in this case evidence that Mr. Turner deducted from the purchase price the amount of the face of the note, to wit, $8,000, and took the property subject to the debt in that sum. Furthermore before entering into the contract he attended at the bank and arranged for extensions of time to pay the debt. The defendant asserts that the mere fact that a mortgagee or trustee has forborne to enforce a right without an agreement to forbear, cannot be made the basis for the consideration of a contract. No one will contend to the contrary but the statement is beside the facts in the instant case.

In his next point the defendant states the question, "Do the letters constitute a promise on the part of H. A. Turner to pay the note?" It will suffice to say that they are at least evidence along that line. In addition to that evidence there was the testimony of two witnesses that Mr. Turner made the express promise.

Adverting to the fact that the plaintiff represents a bank, the defendant contends that if the plaintiff's theory were sound that then the bank would have obtained a written contract from Mr. Turner showing that he had assumed the obligation. No doubt the trial court duly considered it. Furthermore the fact merely tends to create a conflict in the evidence and a court of review is not concerned with the conflicts.

The point is made that the real fact was that the note was secured by a "deed of trust" and that the evidence introduced in many places uses the expression "mortgage". The variance is wholly immaterial. The defendant was being sued on a contract assuming the payment of money. Whether the debt was wholly unsecured, or was

secured by a mortgage, or was secured by a deed of trust, the liability would be the same. (*Daniels* v. *Johnson*, 129 Cal. 415, 417 [79 Am. St. Rep. 123, 61 Pac. 1107].)

▮ Claiming that his alleged contract was within the statute of frauds, the defendant objected in the trial court, and now objects, to the admission of the letters written by him. As we have shown above, the defendant's claim that the case falls within the statute of frauds is not well founded. That being so, it seems quite clear that the last-named objection is without merit. (*Wurdeman* v. *Waller*, 88 Cal. App. 393, 398 [263 Pac. 558].)

▮ In his closing brief the defendant calls attention to the evidence that he did not take title to the property but that the title was taken in the name of Mrs. Turner. Thereupon he claims that he is not liable. Turning back to the evidence introduced, it appears at once that throughout all of the transactions the defendant spoke in the first person. The mere fact that he made payments with his wife's checks did not relieve him from liability. At no time did he disclose the fact, if it was a fact, that he was acting as agent for a principal and give the name of his principal. He may not do so now. (Civ. Code, sec. 2343, subd. 1; 2 C. J. 818.)

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 3, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 31, 1932.