[Civ. No. 15777. Second Dist., Div. Three. Dec. 18, 1947.]

RUTH DOLL, Appellant, v. STEVE MARAVILAS et al., Respondents.

Dailey S. Stafford and William H. Haupt for Appellant.

Don Lake for Respondents.

SHINN, Acting P. J.—This is an appeal by the plaintiff, Ruth Doll, from a judgment for defendants Jock and Maravilas in an action to quiet title to certain restaurant equipment, to cancel the lease of the restaurant and the equipment, and to enjoin the defendants Maravilas from removing the equipment from the restaurant.

The background of the case is as follows. On or about January 8, 1945, one Tharalson, a real estate broker, contacted Olive Vienna, appellant's mother and agent in the matters here involved, regarding the purchase from respondents Jock of the Evergreen Auto Court consisting of approximately 49 cabins generally furnished, a gas station and a restaurant, both equipped, and other buildings. Tharalson left with Vienna overnight certain papers including the two chattel mortgages then on the property and the restaurant lease. The mortgages and the lease included inventories of what each covered. The purchase of the Evergreen Auto Court by appellant from defendants Jock was not consummated, however, until one month later, February 8, 1945, at which time the Jocks likewise executed an assignment to appellant of their reversion under the restaurant lease. Meanwhile, respondents Maravilas, the lessees under the restaurant lease, on or about January 24, 1945, arranged to refit the restaurant. Beginning during the first week in February and for a few weeks thereafter, the restaurant was closed while it was renovated, old equipment removed, and new equipment installed, all under the direction and at the expense of respondent Steve Maravilas, and all unknown to appellant. In August, 1945, Steve Maravilas sought from Vienna an extension of the restaurant lease which otherwise would expire within a year. When such extension was not forthcoming, a dispute about the ownership of certain of the restaurant equipment arose between the Maravilas and Vienna. The Maravilas commenced the operation of an additional restaurant on or about Septem-

ber 1, 1945. About this time they curtailed somewhat the hours of operation of the restaurant here involved by closing Saturdays and not remaining open for the evening meal on their five operating days per week. They also closed for a 10-day period around Labor Day. Vienna claimed that the Labor Day closing was in violation of their lease and demanded possession, but accepted their rent on September 12th. However, the dispute between the Maravilas and Vienna continued, and upon an alleged threat of the Maravilas to remove the disputed equipment, appellant commenced this suit.

The quiet title cause of action will be first considered. At the trial respondents Jock disclaimed any interest in the restaurant equipment claimed by appellant, and respondents Maravilas entered into a stipulation with appellant that they disputed appellant's claim to only the following items of restaurant equipment of the lease inventory claimed by appellant: (1) two booths including tables; (2) gas range including hot plate; (3) pie case; (4) Silex stove and accessories; (5) cash register; (6) steam table; (7) ceiling fan. At the conclusion of the trial appellant expanded the list of items in controversy by adding the following, by way of an amended complaint: (1) ceiling cooling system; (2) sink; (3) counter and stools. Appellant objects in two particulars, so far as her quiet title cause of action is concerned, to the trial court's judgment that she take nothing. ■ She asserts first that the trial court should have quieted her title to those articles which the court found in accordance with the aforementioned stipulation to belong to her. This contention is without merit. There being at the time of the judgment no claims to these articles adverse to appellant's claim of ownership of them, a provision in the judgment quieting her title to them was not warranted. (Code Civ. Proc., § 738; *Taylor* v. *McConigle*, 120 Cal. 123, 127 [52 P. 159]; *Martin* v. *City of Stockton*, 39 Cal.App. 552, 559 [179 P. 894]; *Williams* v. *Rush*, 134 Cal.App. 554, 560 [25 P. 2d 888]; cf. *Baar* v. *Smith*, 201 Cal. 87, 99 [255 P. 827]; *Drake* v. *Russian River Land Co.*, 10 Cal.App. 654, 657-658 [103 P. 167].) ■ Appellant next contends that the trial court's finding against her ownership of the ten disputed articles is erroneous. This contention is likewise untenable. It is settled beyond question that to prevail in a quiet title action, a plaintiff must establish his title to the property

in dispute. (*Tanner* v. *Title Ins. & Trust Co.*, 20 Cal.2d 814, 825 [129 P.2d 383;] *Williams* v. *City of San Pedro,* 153 Cal. 44, 49 [94 P. 234].) This, appellant failed to do. Appellant appears to claim title to the articles listed in the inventory of the restaurant lease together with three additional articles. This inventory does not purport to show what was owned by the lessor; it merely purports to establish what was leased by the lessor. Appellant's claim of title to the restaurant equipment in dispute rests upon the terms of the bill of sale she took from respondents Jock, like her claim of title to the Evergreen Auto Court and its contents generally. The bill of sale, according to its terms, transferred to appellant the Evergreen Auto Court together with all personalty located thereon, ''being more particularly described in Inventory attached to that certain Chattel Mortgage dated August 25, 1942,'' etc. Particular expressions limit general ones. (Civ. Code, § 3534.) Accordingly, to ascertain the personalty which passed to appellant under the bill of sale from respondents Jock, resort should be had to the inventory of the chattel mortgage of August 25, 1942. This chattel mortgage was not introduced in evidence. It is true that appellant introduced in evidence a bill of sale of certain restaurant equipment, dated March 17, 1942, and an undated list of such equipment which one George Young, a witness and the original lessor of the restaurant to Steve Maravilas, identified as containing the equipment which was in the restaurant when he leased it to Maravilas in August, 1942. Apparently, we are asked to assume that the inventory of the missing chattel mortgage is identical in content with this list. This we cannot do.

It may be that the evidence would have supported an interpretation which gave effect to the general description in the bill of sale notwithstanding the reference to the inventory attached to the chattel mortgage, upon the theory that there was an ambiguity for which the Jocks were responsible (Civ. Code, § 1654), or because they believed that plaintiff was relying on the general description (Civ. Code, § 1649). But the finding that plaintiff had no title does not necessarily rest upon a failure of the court to give effect to the general language. It is supportable upon the ground that the Jocks did not have title to the articles in question.

The record shows that title to the ten disputed articles is not in appellant. Appellant bases her claim of ownership

of this equipment upon the provision of the lease obligating the Maravilas, as lessees, "to replace, at their own cost and expense, any items that become broken, damaged or lost." Respondents Jock, appellant's immediate predecessor as landlords of the Maravilas, however, waived the benefit of this replacement provision and permitted Steve Maravilas to acquire title to replacements. As to the seven disputed items which are contained in the inventory of the lease, the Jocks signified their consent to this arrangement by striking from the inventory of Maravilas' copy of the lease those items which Maravilas had replaced. Mrs. Jock initialed these deletions. The Jocks also acquiesced in Maravilas' claim of ownership of the three disputed items which are not contained in the lease inventory. The apparent reason for this generous attitude of the Jocks was the fact that much of the leased equipment had been there about 20 years and most of it was secondhand. The history of the disputed equipment is enlightening. Steve Maravilas replaced the Silex equipment at his own expense when he moved in as Young's tenant in 1942. About two or three months later he installed the ceiling cooling system, also at his own expense. The ceiling fan was not removed from the restaurant until February, 1945, when he and Jock took it out. The ceiling cooling system, being an addition by Maravilas, was removable by him at the termination of the lease according to its terms. The sink became badly cracked. Jock took it out and Maravilas replaced it at his own expense. About the time the Maravilas entered into their lease with the Jocks, Maravilas replaced the range, the steam table, and the pie case at his own expense. A few months later he bought a cash register when the Jocks removed the one in the restaurant to their office. The 1945 refitting by Maravilas, which was undertaken with the consent of the Jocks, involved trading in the range, the counters and stools, and the two booths for another range, steam table, pie case, counter and stools. The replacements cost approximately $2,000, while $160 was allowed for the trade-in. The replacements were purchased on a conditional sales contract, and at the time of the trial, title to these articles was still in the conditional vendor. From the foregoing, it can be seen that the finding of the trial court as to appellant's lack of title to the disputed equipment is supported by substantial evidence.

██ Inasmuch as the restaurant lease expired on August 11, 1946, appellant's third cause of action, for injunctive relief, has become moot. But the same may not be said regarding her second cause of action, for cancellation of the lease, on account of the provision in the lease for attorney's fees in the event it became necessary to enforce the lease. Whether appellant is entitled to attorney's fees under this provision depends upon whether the lease was breached.

██ Appellant claims that the Maravilas breached the lease by their 10-day closing around Labor Day and by their failure to keep the restaurant open during business hours. The trial court found adversely to these claims. It found that the Labor Day closing was done with the consent of appellant and that appellant is bound by her predecessor's liberal interpretation of the meaning of "business hours." Its finding as to the Labor Day closing was made upon conflicting evidence and is therefore binding upon us. Appellant, however, brands the evidence supporting this finding as inherently improbable because at the time this concession was allegedly made, the parties were engaged in a dispute over the ownership of various items of the restaurant equipment. We do not so regard it in view of the further circumstance that the parties were seeking to compromise their dispute.

██ The question presented by the "business hours" controversy is an interesting one. Is a successor landlord bound by his predecessor's interpretation of the terms of the lease? We believe that generally he is. It is a well-established rule of law that an assignee, such as appellant is, can gain no better position than his assignor had with respect to the subject matter of the assignment. (*Western Oil & Ref. Co.* v. *Venago Oil Corp.*, 218 Cal. 733, 738 [24 P.2d 971, 88 A.L.R. 1271]; Rest., Contracts, § 167.) ██ Likewise, it is elementary that a contract is to be interpreted so as to give effect to the mutual lawful intention of the parties as it existed at the time of contracting. (Civ. Code, § 1636.) This means that throughout the life of an unmodified contract its interpretation is governed by the mutual intention of the original parties at the moment of contracting. In other words successors in interest are bound by the construction reasonably given contractual terms by the original parties.

██ Furthermore, since contemporaneous exposition is generally the best (Civ. Code, § 3535), such construction may be

shown by their conduct in respect to uncertain terms where the meaning so determined is not unreasonable in view of the language used. (*Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 761 [128 P.2d 665]; Rest., Contracts, § 235e.) ▮▮▮ In the instant case the original parties to the lease before us were the Maravilas and the Jocks. The lease read, "said premises shall be open for business by the Lessees during all business hours during said term." The Jocks allowed the Maravilas to run the restaurant to suit themselves and to keep open for such hours as they found feasible in view of food and help shortages and demand. This liberal interpretation of what was meant between the original contracting parties by "business hours" is not unreasonable under the surrounding circumstances. This was a fixed rent rather than a percentage lease; consequently, the rental value of the property to the landlord was unaffected by the restaurant's operating hours. While it undoubtedly added to the customer appeal of the auto court to have a going restaurant on the premises, the cabins had cooking facilities and they were not rented on a room and board basis. Even Young, the Jock's predecessor as landlord of the Maravalis, left the daily operating hours of the restaurant up to them. On the basis of the foregoing we are satisfied that the trial court's findings that the lease was not breached is correct.

The judgment is affirmed.

Wood, J., and Vallée, J. pro tem., concurred.