[Civ. No. 25587. Second Dist., Div. Four. Mar. 12, 1962.]

HY SPECTOR et al., Plaintiffs and Respondents, v. NATIONAL PICTURES CORPORATION, Defendant and Appellant.

THEODORE R. KUPPERMAN et al., Plaintiffs and Respondents, v. NATIONAL PICTURES CORPORATION, Defendant and Appellant.

220

Fendler & Lerner, Harold A. Fendler, Glenn Warner and Douglas Fendler for Defendant and Appellant.

Allen, Fasman & Wolf and Leonard S. Wolf for Plaintiffs and Respondents.

JEFFERSON, J.—Defendant National Pictures Corporation appeals from an adverse judgment in an action for breach of contract. The facts material to this appeal are as follows: Plaintiffs, individually or through their assignors or predecessors, (herein referred to as "plaintiffs") were members of a group of investors which severally furnished the sum of $40,000 toward the financing of a motion picture entitled "New Faces of 1952." Plaintiffs in this action provided $27,000 of the $40,000 furnished by the entire investor group. The funds were provided pursuant to a written agreement (herein referred to as "the financing agreement") between the investors and Berman Swarttz Productions, Inc., (herein referred to as "Productions") on or about June 30, 1953, as subsequently modified by a written instrument dated September 1, 1953.

Two paragraphs of the financing agreement created an ambiguity as to whether Productions was obligated to repay the investors only from a specific fund, the gross receipts of the motion picture (paragraph Eighth), or independently, whether or not there were gross receipts (paragraph Third).[1]

During August 1953 Productions and defendant National Pictures Corporation negotiated an agreement (herein re-

---

[1] "Paragraph Third: The Producer hereby agrees to execute and deliver to each Investor any and all instrument or writings necessary to carry into effect this agreement, including but not being limited to the following: (a) Its Promissory Note in the amount furnished by each Investor, as aforesaid, providing for interest at the rate of six percent (6%) per annum and payable not later than two (2) years from September 1, 1953 or eighteen (18) months from the date of the first general release of the photoplay in the United States of America, whichever shall first occur. It is specifically understood and agreed that said Promissory Notes shall be an obligation of the Producer and shall not be an obligation of any of its officers, directors or shareholders.

". . . . . . . . .

"Paragraph Eighth: (a) All revenues, proceeds and receipts of every kind and nature whatsoever obtained or to be obtained by the distributors of said photoplay, or by the Producer otherwise, from the distribution, exhibition and exploitation of said photoplay in any and all media (collectively hereinafter referred to as the 'gross receipts'), after the deduction from such gross receipts of [listed deductions] shall be disbursed and paid as follows and in the following order: FIRSTLY: (1) To the bank . . . until such time as the entire amount of such Bank Loan, plus interest and charges thereon shall have been recouped and paid. (2) To the Producer . . . until the entire amount so furnished . . . plus customary interest thereon, shall have been recouped and paid. (3) To the Investors, in proportion to the amounts furnished by them, as aforesaid, until such time as the entire sum of Forty Thousand Dollars ($40,000.00), plus interest thereon at six percent (6%) per annum, furnished by them as end money, as aforesaid, shall have been recouped and paid. . . . SECONDLY: (1) The balance shall, for the pur-

ferred to as the ''assignment agreement'') whereby defendant became obligated to produce the motion picture instead of Productions. On or about September 8, 1953, this contract was executed as modified by a supplementary letter agreement of the same date. The assignment agreement contained two ambiguous clauses as to whether defendant assumed Production's obligations to plaintiffs.[2]

On October 9, 1953, a photostatic copy of the assignment agreement was mailed to each of the plaintiffs. On the same date, Productions made, executed and delivered its chattel mortgage and promissory notes to plaintiffs. Each of the promissory notes payable to plaintiffs individually provided in part: ''This note is *subject to the terms and conditions* of the . . . Financing Agreement.'' (Italics added.)

On October 23, 1953, the $40,000 furnished by the investors including $27,000 furnished by plaintiffs was paid from an escrow directly to defendant. This money was deposited in a bank to the account of defendant and was used for production costs of the motion picture which was subsequently produced.

On October 28, 1953, defendant executed a document entitled ''Chattel Mortgage, Pledge and Assignment of Income and Copyright'' in which plaintiffs were designated ''mortgagee.''

The motion picture was first released for general theatrical exhibition in the United States of America on or about February 14, 1954. Defendant collected all of the revenues of the motion picture and, from time to time, mailed plaintiffs financial statements showing the status of receipts and dis-

poses hereof, be deemed 'net profits'. (b) In further consideration for the funds to be furnished by the Investors hereunder, Producer agrees to pay to each Investor and each Investor agrees to accept a sum equal to three-eighths of One Percent (⅜ of 1%) of such net profits from said photoplay for each One Thousand Dollars ($1,000.00) furnished by each Investor, as aforesaid. . . .''

[2]Paragraph Third provided in part: ''. . . and National hereby accepts such assignment and transfer and hereby assumes all of Productions' obligations under and pursuant to said agreements; and National hereby further agrees to perform and satisfy all of the terms and conditions of said agreements to be performed and satisfied by Productions thereunder; . . .''

Paragraph Nineteenth, subdivision (b) provided: ''Regardless of any reference to any party other than the parties hereto made in this agreement, nothing is intended to or shall be herein construed to give to any such other party or person, natural or artificial, any legal or equitable right, remedy or claim, under this agreement or any part thereof, as against either or both Productions and National.''

bursements.[3] None of the plaintiffs received from either Productions or defendant National any funds whatever, either as a repayment of the amounts furnished, payment of the notes, interest or as a share of the profits.

Two groups of investors commenced separate actions against defendant, as third party beneficiaries of the assignment agreement, for the recovery of the amounts they furnished with interest thereon as provided for in the financing agreement and in the promissory notes executed pursuant thereto. The actions were consolidated for trial. During the nonjury trial plaintiffs and defendant introduced extrinsic evidence to aid the court in the interpretation of the financing and assignment agreements.

The court gave judgment for each of the plaintiffs against defendant for the principal amount of the monies furnished by them to Productions as set forth in the promissory notes together with interest thereon at 6 per cent annually from October 9, 1953.

Defendant's motion for a new trial was denied, and it appeals from the judgment contending initially the evidence is insufficient to support certain findings and the judgment. When the trial court finds that a contract is ambiguous or uncertain, it is primarily that court's duty to construe it after a full opportunity for the parties to produce evidence of the facts, circumstances, and conditions surrounding its execution and the conduct of the parties relative thereto. (*Walsh* v. *Walsh,* 18 Cal.2d 439, 443 [116 P.2d 62].) Whether or not extrinsic evidence has been introduced to aid the court in construing the provisions of a contract the interpretation placed upon the contract by the trial court will be accepted by this court if such interpretation is reasonable, or if the interpretation of the trial court is one of two or more reasonable constructions of the instrument. (*Prickett* v. *Royal Insurance Co., Ltd.,* 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907]; *Estate of Rule,* 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319]; *Universal Sales Corp.* v. *California Press Mfg. Co.,* 20 Cal.2d 751, 772 [128 P.2d 665].) In the instant case the interpretation of both agreements by the trial

---

[3]At the time of trial the statements showed that each plaintiff was entitled to receive his prorata share of $5,918.03, from the proceeds realized from the distribution of the motion picture. Defendant asserted no interest in these proceeds but withheld payment because Mr. Berman Swarttz, President of Productions, had asserted a prior claim to them in a lawsuit pending between him and defendant.

court was reasonable in light of the terms of the instruments as well as the extrinsic evidence in the record.

 The trial court found in substance that the parties to the assignment agreement intended that defendant perform the obligations of Productions to the plaintiffs including the obligations to plaintiffs as recited in the financing agreement. In addition to extrinsic evidence received by the court this finding is supported in part by paragraph Third of the assignment agreement providing: "National hereby . . . assumes all of Productions' obligations. . . ." The chattel mortgage executed by defendant to plaintiffs recites that the investors "had advanced to [defendant] the sum of FORTY THOUSAND . . . DOLLARS." The mortgage was "for the purpose of securing the payment of all monies . . . loaned and advanced by the [investors]. . . ." The evidence is substantial and sufficient to support this finding. The court correctly concluded that plaintiffs, as third party creditor beneficiaries of the assignment agreement, were entitled to enforce their rights under the financing agreement against defendant.

 The effect of Civil Code section 1559 providing that "[a] contract made expressly for the benefit of a third person, may be enforced by him" is to exclude persons only remotely or incidentally benefited. Plaintiffs need not be named as individuals in the contract. It is sufficient that the promisor understood that the promisee intended to benefit them. (*Lucas v. Hamm,* 56 Cal.2d 583, 590, 591 [15 Cal.Rptr. 821, 364 P.2d 685]; *Bryan v. Banks,* 98 Cal.App. 748, 756 [277 P. 1075].)

 Paragraph Nineteenth (b)[6] providing in substance that the assignment agreement is not intended nor should be construed to create any third party claims against either or both Productions or National is in direct conflict with paragraph Third. The trial court apparently chose to accept the contention of plaintiffs that it was not intended that the former paragraph be applicable to them but instead to parties to the forty other agreements involved in the project of making a motion picture from a Broadway play.

 The court further found in substance that the parties to the financing agreement intended that Productions pay plaintiffs the amounts of their investments within the time specified in the promissory notes (paragraph Third) and that this obligation was independent of and without regard to

[6]See footnote 2.

the revenues derived from the distribution of the motion picture (paragraph Eighth). Although the basis for this interpretation of the financing agreement does not appear in the record the court could have properly reached this result by an alternative application of either of two rules of construction in the Civil Code. Civil Code section 1641 provides: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." The two provisions in question could have been reconciled by inferring the transaction was basically as follows: The investors were entitled to participate in the proceeds of the picture in accordance with paragraph Eighth to the extent that there were proceeds available for the repayment of their investment prior to the time the promissory notes became due. But, in any event, their money would be repaid with interest not later than the due date specified in the notes.

The court could have reached the same result under Civil Code section 1654: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." The financing agreement was drafted by an attorney, Berman Swarttz, the President of Productions. He testified that he had had previous experience in drafting similar contracts. ■ Although the uncertainty was caused by defendant's assignor, successors in interest are bound by the construction reasonably applicable to the original parties. (*Doll* v. *Marvillas*, 82 Cal.App.2d 943, 949 [187 P.2d 885].)

■ Defendant next contends that even if the obligation was assumed it was secured by a chattel mortgage, and therefore the assuming transferee is entitled to have the security exhausted by foreclosure of the mortgage before it becomes liable for any deficiency. (Code Civ. Proc., § 726.) Plaintiff correctly contends this defense was waived because it was not seasonably raised by defendant. ■ The mortgagor's transferee who assumes the debt becomes a surety for the payment of the deficiency to the mortgagee, and the latter must exhaust the security before he may recover the deficiency from the assignee. (*Birkhofer* v. *Krumm*, 4 Cal.App.2d 43, 50 [40 P.2d 553].) ■ When an action is brought to enforce the terms of payment of a secured obligation the existence of a security interest within the terms of section 726 of the Code of Civil Procedure is an affirmative defense which must be

pleaded in the answer or it is waived. (*Salter* v. *Ulrich,* 22 Cal.2d 263, 267, 268 [138 P.2d 7, 146 A.L.R. 1344].) This defense may also be asserted by demurrer to a complaint indicating on its face that the obligation is secured. (See *Security-First National Bank* v. *Chapman,* 31 Cal.App.2d 182 [87 P.2d 724].) Just as the benefits of section 726 may be waived if the mortgagor fails to bring this defense to the attention of the court (*Salter* v. *Ulrich, supra,* at p. 268), so may the defense be waived by mortgagor's assuming transferee who fails to raise it seasonably. In the instant case the notes sued upon were secured, but this fact did not effectively appear in the complaint, the answer, the pretrial order, or through a motion to amend the pretrial order. The defense was asserted for the first time on the day of the trial. The court ruled the pretrial order controlled the subsequent course of the case and refused to permit defendant to amend its answer to assert the defense for the first time. This decision was within the discretion of the trial court, and it does not appear there was an abuse of discretion in this case. *Lewis* v. *Hunt,* 133 Cal.App. 520 [24 P.2d 557], cited by defendant, is not applicable for, although the same issue could have arisen therein, the trial and appellate records indicate the question was neither urged by counsel nor considered by the court.

 Lastly, defendant contends the court erred in sustaining plaintiff's objection to a question posed to Mr. Alperson, president of defendant, concerning his intention as to the liabilities assumed by Productions pursuant to the assignment agreement. In the question Alperson was asked if at any time, either before signing the assignment agreement, at any time after signing it, or at the time he signed it, he understood or intended that National was to be obligated to repay these plaintiffs for the amount of their investment otherwise than from the gross receipts from distribution of the picture. He answered in the negative. This was followed by a series of objections to the question on grounds that it was incompetent, irrelevant and immaterial; it violated the parol evidence rule; and it called for a conclusion of the witness. The court sustained the objection.

The objection was properly sustained. Although acts and declarations of parties are relevant before a controversy arises (*Kaneko* v. *Okuda,* 195 Cal.App.2d 217, 225 [15 Cal.Rptr. 792]) only testimony of Mr. Alperson's intention or understanding at the time the contract was executed was material and relevant. As asked, the question related to the intent or

understanding before, during and after the execution of the contract. In that form it was objectionable.

Further, it should be noted that the witness responded to the question before the objection was made, and the answer is in the record. Plaintiffs' counsel did not move to strike the answer. Therefore, defendant may not now claim error of the trial court. (*Estate of Hess*, 183 Cal. 589, 599 [192 P. 35].)

The judgment is affirmed.

Burke, P. J., and Balthis, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 9, 1962.