[Civ. No. 8065.   Fourth Dist., Div. Two.   Dec. 13, 1966.]

INVESTCAL REALTY CORPORATION, Plaintiff, Cross-defendant and Respondent, v. EDGAR H. MUELLER CONSTRUCTION CO., INC., et al., Defendants, Cross-defendants and Appellants; THOMAS W. GREER et al., Defendants, Cross-complainants and Appellants; PERCY H. GOODWIN COMPANY, Cross-defendant and Respondent.

Bluford H. Light for Defendants, Cross-defendants and Appellants.

Tankel, Toll, Lertzman & Leavitt, Richard B. Leavitt and Donald E. Smallwood for Defendants, Cross-complainants and Appellants.

Kindel & Anderson and Paul L. Freese for Plaintiff, Cross-defendant and Respondent and for Cross-defendant and Respondent.

McCABE, P. J.—Appeal from a judgment decreeing the foreclosure of a deed of trust, ordering the sale of real property upon which it was a lien, a deficiency judgment, and from judgment in favor of cross-defendants on the cross-complaint.

Plaintiff Investcal Realty Corporation (hereinafter referred to as Investcal) brought an action against defendants Edgar H. Mueller, Edgar H. Mueller Construction Co., Inc. (hereinafter referred to as Mueller Construction), Selma Allen and Thomas Greer to foreclose, judicially, a deed of trust and to obtain a deficiency judgment against defendants. Two defendants, Greer and Allen, cross-complained against plaintiff Investcal, defendants Mueller Construction, Mueller and Percy H. Goodwin Company, (sued as a partnership but appearing as a corporation) to quiet title to one of the parcels of land involved in the action to foreclose. Cross-defendant Percy H. Goodwin Company was not a defendant in the original action. Although defendants Mueller Construction and Mueller were named as defendants in the cross-complaint, there is nothing in the record brought to us to indicate they had been served or their appearance in the action on the cross-complaint. From a judgment entered on November 9, 1964, in favor of plaintiff on the complaint and in favor of cross-defendants on the cross-complaint, defendants appeal.

Defendants and cross-complainants Greer and Allen signed a separate notice of appeal from that of defendants Mueller Construction and Mueller. Both notices of appeal recite an appeal taken from the judgment of November 9, 1964. On this appeal all defendants join in one brief raising the same issues except that defendant Allen seeks a reversal of the judgment entered on the cross-complaint.

Factually, it appears that Mueller Construction Company owned a large parcel of land of which Parcel No. 1 was a subdivided lot. As to this larger parcel, only Parcel No. 1 is involved in this action. The entire tract appears to have been purchased by Mueller Construction in December 1961. At or

about the time that Mueller Construction Company purchased this tract, including Parcel No. 1, defendants Greer, Mueller and Allen entered into an informal, verbal, general partnership which on January 24, 1962, was reduced to writing and signed by Mueller, Greer and Allen.

By the terms of the written partnership agreement, the partnership became known as Huntington Development Company. It had for its express purpose the conducting of a real estate development business with broad powers to purchase, develop, sell and generally deal in real property and related matters. The written agreement also provided that each party in the general partnership was to have a one-third interest. Among other things the written partnership agreement provided: ''Each of the parties shall contribute their services, credit and moneys as shall from time to time be required for the operation of the partnership's business. The partners shall have the right to loan money to the partnership and in such event the partnership agrees to pay interest on such loans at a mutually agreed rate of interest.''

At or about the time of the signing of the general partnership agreement, plaintiff Investcal first became interested in acquiring Parcel No. 1. On January 31, 1962, the partnership being in need of money was loaned $15,000 by Investcal. The note, which was signed by Mueller Construction, Edgar Mueller, Selma Allen and Thomas Greer, was secured by a trust deed given on Parcel No. 1 and a separate parcel hereinafter referred to as Parcel No. 2. Only defendants Mueller Construction Company and Selma Allen signed the deed of trust. At the date of signing of the deed of trust and for some period of time prior thereto, Selma Allen had owned Parcel No. 2 in her individual right. At the time when the money was loaned by Investcal, both parcels of land were encumbered by other deeds of trust. The entire larger tract, including Parcel No. 1, had a blanket trust deed on it securing a note for $232,-000. Also, there was a trust deed on the entire larger tract, including Parcel No. 1, of $40,000 in favor of another lender. Initially, when Investcal loaned the $15,000 and took a trust deed on Parcel No. 2, there was a first trust deed lien on Parcel No. 2. Hence, when Investcal loaned the $15,000, the trust deed which secured the $15,000. note was a junior lien on both Parcels No. 1 and No. 2.

At a time not quite clear from the record, the title to Parcel No. 1 was conveyed from Mueller Construction to the partner-

ship, Huntington Development Company. However, the conveyance occurred after the formal partnership agreement was signed and in February 1962.

At or about the time when Investcal loaned the $15,000, it also obtained an option in consideration of making the loan, to purchase Parcel No. 1 which was a subdivided lot somewhat in excess of one acre in size. It was zoned for agricultural purposes only. The option required the optionor to obtain a change of zone to commercial use.

Prior to the signing of the partnership agreement, the Investcal note and deed of trust, and on January 16, the City Council of the City of Huntington Beach had denied Mueller Construction's petition to rezone Parcel No. 1 from the then existing agricultural zoning to commercial zoning. In April 1962, a second petition for change of zone as to Parcel No. 1 was denied by the City of Huntington Beach.

In the latter part of February 1962, Parcel No. 1 was reconveyed to the owner free of the blanket first trust deed. This resulted in the encumbrance in favor of Investcal as to Parcel No. 1 becoming a second trust deed subject only to a first trust deed in favor of one Lewis.

Later, and in June 1962, Investcal exercised its option to purchase Parcel No. 1 and gave notice by letter to the defendant partners. However, the partners did not comply with the duties to be performed on their part. The escrow opened to complete the transaction did not close. On September 18, 1962, Mr. Lewis who held the first trust deed on Parcel No. 1 recorded a notice of breach and default and election to sell under the provisions of his deed of trust. The sale of the property under the defaulted trust deed took place on February 11, 1963. Investcal was the successful purchaser for the sum of $26,281.21. Later that year, Investcal contracted to sell Parcel No. 1 to one Murdy for $60,000. The contract with Murdy was not contingent upon obtaining a zoning change but Murdy applied for and received a change of zone before the close of escrow. The escrow closed on July 13, 1963.

Plaintiff's demand upon defendants for the payment of $15,000 was made on February 25, 1963. Failing to receive the payment, this action to foreclose the deed of trust on Parcel No. 2 and to secure a deficiency judgment for any balance remaining unpaid on the promissory note after the judicial sale of the foreclosed premises was filed by plaintiff

on August 28, 1963, approximately six months after the demand.

The contention is made that the deed of trust on Parcel No. 2 given to Investcal was not executed and delivered for a valuable consideration and, therefore, not enforceable against defendant Allen's property (Parcel No. 2). To support the contention that consideration was absent, defendants assume that because the option agreement was executed on January 30, 1962, and the promissory note and deed of trust were signed on January 31, 1962, it is conclusive that the consideration would not be a valuable consideration to support the deed of trust on Parcel No. 2, and since the option provided for the making of the loan on the previous day, past consideration is not sufficient to support a contract.

■ Consideration may be implied from the circumstances surrounding the execution of the trust deed. (*Bean* v. *Reicker,* 120 Cal.App. 403, 410 [7 P.2d 1055].) Additionally, at the time the note and deed of trust were signed, defendant Allen was a partner in the Huntington Development Company, and by its partnership agreement she had agreed to advance her credit, services and money in furtherance of the partnership goals. Defendant Allen was performing her legal obligations incurred under the partnership agreement. It is admitted the partnership received the $15,000.

■ If defendants' contention is that there was inadequacy of consideration for the $15,000 loan, the answer to the contention may be found in *Riegel* v. *Wollenshlager,* 49 Cal.App. 300, 302 [193 P. 160], where the court states: "Inadequacy of consideration is no defense to the enforcement of a contract voluntarily made."

Defendants urge that Investcal, a junior lienholder, by purchasing Parcel No. 1 at the foreclosure sale of the Lewis first trust deed, merged its title to the property resulting in an extinguishment of the obligation in its entirety. In support of this position defendants cite *Summy* v. *Ramsey,* 53 Wash. 93 [101 P. 506, 508]; *Miller* v. *Little,* 37 N.D. 612 [164 N.W. 19]. These cases are readily distinguishable and are not authority for the principle suggested by defendants.

In *Summy* v. *Ramsey, supra,* the issue presented for determination was whether or not a mortgage of record was an outstanding lien of record thus preventing a subsequent holder of title from conveying "good and marketable" title. The prior mortgage had not been released of record, but the

mortgage had been *assigned* by the mortgagee to the same person who ultimately acquired title to the property in question by conveyance from the mortgagor. The court in holding the mortgage lien had merged into the title acquired by the titleholder's predecessor in interest stated: "Whether a merger will be recognized in equity depends upon the interests of the parties and the surrounding circumstances. If there are outstanding liens against which it becomes necessary to protect the title, a merger will not occur. Equity will prevent a merger to promote substantial justice, but will not do so when its prevention would promote a fraudulent transaction, or carry into effect any unconscionable wrong. 'Whatever may be the circumstances, or between whatever parties, equity will never allow a merger to be prevented, and a mortgage or other security to be kept alive, when this result would aid in carrying a fraud or other unconscientious wrong into effect, under the color of legal forms. . . .'

"If the holder of a mortgage obtains a deed to the mortgaged land, and then conveys to another with full covenants of title, the mortgage is discharged by merger. [Citation] If the holder of a mortgage, having also acquired the title, treats the two estates as coalesced and assumes to convey with full covenants, such conduct is conclusive as to him, and a merger must be deemed to have irrevocably taken place."

The *Ramsey* case is a clinical example of merger of title but not only are the facts distinguishable but the same legal result does not flow in the instant appeal. (*Carpentier* v. *Brenham*, 40 Cal. 221; *Brooks* v. *Rice*, 56 Cal. 428.)

Defendants conclude it would be inequitable to permit the plaintiff, Investcal Realty, to foreclose the trust deed on the Parcel No. 2 since it received some $53,606.35 (after payment of a broker's fee and other costs) and paid but $26,348.51 for the purchase of Parcel No. 1 at the foreclosure sale and additionally had a $15,000 note secured by the second trust deed.

■ Plaintiff points out that its only recourse to collect the note was to foreclose the trust deed (Parcel No. 2) pursuant to the provisions of Code of Civil Procedure, section 276. This is not necessarily true for the creditor might elect to sue on the note, disregarding the security where there has been a waiver of the benefits of section 726, Code of Civil Procedure. (*Salter* v. *Ulrich*, 22 Cal.2d 263, 268 [138 P.2d 7, 146 A.L.R. 1344]; *Spector* v. *National Pictures Corp.*, 201 Cal.App.2d 217, 226 [20 Cal.Rptr. 307].) Plaintiff Investcal's complaint contained

a prayer for judgment on the note and judgment was entered against all defendants as joint and several obligors upon the promissory note and the deed of trust was foreclosed as to Parcel No. 2 again with all the defendants jointly and severally liable for the deficiency remaining on the note, if any, after the sale of Parcel No. 2.

Investcal's security in Parcel No. 1 had been rendered valueless through no fault of Investcal. Investcal, unlike a holder of a senior lien on which a sale is conducted, could not "buy in" the property by using its own paper, for Investcal had to pay cash at the sale in order to obtain the property and prevent the loss of that sum which it had previously advanced. ▆ Investcal properly brought this action to foreclose the trust deed securing the promissory note in accordance with Code of Civil Procedure, section 726, on the principle that the limit on a single cause of action of foreclosure refers to the time action is brought, not to the time trust deed was made, and subsequently a portion of that security had become valueless. (*Brown* v. *Jensen,* 41 Cal.2d 193, 195 [259 P.2d 425], cert. den. 347 U.S. 905 [98 L.Ed. 1064, 74 S.Ct. 430] ; *Security First Nat. Bank of Los Angeles* v. *Chapman,* 31 Cal.App.2d 182, 190-191 [87 P.2d 724].) This rule is applicable in the case of a second lienholder, the security being lost or valueless to him when the first lienholder forecloses his lien and the property is sold for no more than the amount of the senior lien and a deed given to the purchaser at that sale. (*Savings Bank of San Diego County* v. *Central Market Co.,* 122 Cal. 28 [54 P. 273] ; *Giandeini* v. *Ramirez,* 11 Cal.App.2d 469, 472 [54 P.2d 91].) ▆ The fact that the deed of trust was a lien on two parcels of property at the time when the loan was made does not preclude Investcal from bringing this action to foreclose even though one parcel no longer constituted security for the obligation at the time when the action to foreclose was filed. (*Mortgage Guarantee Co.* v. *Sampsell,* 51 Cal.App.2d 180, 183-184 [124 P.2d 353] ; *Freedland* v. *Greco,* 45 Cal.2d 462, 466 [289 P.2d 463] ; *Heckes* v. *Sapp,* 229 Cal.App.2d 549, 553 [40 Cal.Rptr. 485].) ▆ It cannot be said that Investcal, a junior lienholder as to Parcels No. 1 and No. 2 at the time of the loan, was precluded from an action to foreclose. If a junior lienholder, such as Investcal, fortuitously has secured the deed of trust by a lien on other property (Parcel No. 2), we cannot hold Investcal waived its secured interest as to the other lien if the junior lienholder

198

purchases the property at the senior lienholder's trustee sale. (*Ferry* v. *Fisk*, 54 Cal.App. 763, 764, 769 [202 P. 964].)

■ It is next contended that the judgment awarding a deficiency judgment is contrary to public policy, for the trust deed was a purchase money trust deed, therefore, no deficiency can be awarded. The evidence is contrary to this exposition for at the time of the loan, Parcel No. 2 (the Allen property) was owned by defendant Allen and subject to a first lien of record; Parcel No. 1 was owned by defendant Mueller Construction subject to two liens of record and defendant Mueller testified the $15,000 loaned by Investcal was for "front money." Under the force of this evidence, defendants cannot in good conscience assert and the court could not find the loan was purchase money. There was no substantial evidence that all or any part of the $15,000 Investcal loan was purchase money as contemplated by the law of this state. (*Stockton Sav. & Loan Bank* v. *Massanet*, 18 Cal.2d 200, 207-209 [114 P.2d 592]; *Bargioni* v. *Hill*, 59 Cal.2d 121, 123 [28 Cal.Rptr. 321, 378 P.2d 593].) A deficiency judgment is not barred by reason of the provisions of Code of Civil Procedure, section 580b. (*Bargioni* v. *Hill, supra*, 59 Cal.2d 121, 122-123.)

■ In the instant case plaintiff Investcal avoided the application of the provisions of section 580a, Code of Civil Procedure, by seeking a judicial foreclosure as contrasted to a sale under the power of sale provisions of the deed of trust, *Hatch* v. *Security First Nat. Bank of Los Angeles*, 19 Cal.2d 254, 258-259 [120 P.2d 869], and complied with the requisites set forth in Code of Civil Procedure, section 726, to prevent waiver of the right to a deficiency judgment after a judicial foreclosure. (*Commercial Centre Realty Co.* v. *Superior Court*, 7 Cal.2d 121, 125-126 [59 P.2d 978, 107 A.L.R. 714].)

A deficiency judgment as ordered by the trial court would not be precluded by the provisions of section 580d, Code of Civil Procedure, for the purpose of that section is to position judicial enforcement of a deed of trust on a parity with sales by trustees under the power of sale provided for in the deed of trust. (*Roseleaf Corp.* v. *Chierighino*, 59 Cal.2d 35, 43 [27 Cal.Rptr. 873, 378 P.2d 97].)

It is also noted the *Roseleaf* case points out that under the judicial sale procedure there is a right of redemption which does not exist in a sale by a trustee under power of sale.

■ By the evidence the trial court was aware that a senior lien existed on Parcel No. 2; Investcal's lien was junior

to it, and the equity owned by defendant Allen was, under the evidence, insufficient to satisfy the obligation owed to Investcal. It follows, therefore, that it was proper for the trial court to decree a deficiency judgment.

Defendants ascribe to plaintiff and cross-defendants unconscionable conduct and oppressive tactics which in combination resulted in Investcal coming into court with unclean hands. These accusations are based upon Investcal taking an option on Parcel No. 1 thus not allowing defendants freedom of action to find any other buyers for that parcel at a time during the option term; Investcal knew defendants did not have sufficient funds to make payments to Lewis, holder of the first lien on Parcel No. 1; defendants had requested the opportunity to sell Parcel No. 1 to some, as yet, uninterested third party; after Investcal received notice of default under the first lien (Lewis) it did not contact defendants; despite the fact the note held by Investcal was due January 31, 1963, no demand was made by it until February 25, 1963; and finally Investcal did not attempt to obtain payment on the note held by it until after the sale to Murdy was consummated.

On this point defendants cite no law to sustain their ascription. The entire record of this case reflects that these were business transactions engaged in by defendants when they were underfinanced. Investcal loaned money and desired security for the loan. Absent sufficient security Investcal would not have made the loan to defendants. Defendants voluntarily sought, received and secured the loan. The option to purchase Parcel No. 1 was given as part of the consideration for the $15,000 loan which money was needed by defendants as "front money." There was no coercion on the part of Investcal which was causative of the default on the Lewis lien. The record is silent as to why defendants did not comply with the terms of the option exercised by Investcal. Defendants could not obtain the change of zone which decision regarding rezoning did not reside in Investcal but a political governing body. There is no evidence that Investcal could or did exercise any influence with the political governing body on defendants' application for rezoning. The obligation to obtain the rezoning was upon the defendants not upon Investcal. The sale to Investcal under the option failed but not by any act or conduct attributable to Investcal. From the taking of the option by Investcal on Parcel No. 1, it can be inferred that Investcal was interested in acquiring the property but stand-

ing alone no diabolical, illegal or unethical conduct attaches to its desire to acquire the property. The trial court properly found there was no proof on this issue raised by the defendants.

Judgment affirmed.

Tamura, J., concurred.